UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA M. I. KELTON, | : | Case No. C-1-02-345 |
| | : | |
| Plaintiff, | : | Judge Weber |
| | : | |
| v. | : | **REPLY MEMORANDUM OF** |
| | : | **DEFENDANT JEFFREY MILLS** |
| UNIVERSITY OF CINCINNATI, et al., | : | **IN SUPPORT OF HIS MOTION** |
| | : | **FOR SUMMARY JUDGMENT** |
| Defendants. | : | |

## I. INTRODUCTION

Mills's motion for summary judgment should be granted. Kelton failed to address Mills's qualified immunity defense, effectively admitting that her gender discrimination and conspiracy claims against him should be dismissed. Even if Mills were not entitled to qualified immunity, Kelton failed to present a scintilla of evidence supporting her claims against him. Kelton cannot demonstrate a prima facie case of gender discrimination against Mills because she cannot establish that a male became department head or that Mills, a non-decisionmaker, took an adverse action against her in connection with the headship search. There is no evidence that Mills's gender-neutral submissions to the search committee were a pretext for gender discrimination. Kelton's conspiracy claim against Mills is barred by the intracorporate conspiracy doctrine, and her argument that Mills acted outside the scope of his employment is without merit and is fatal to all of her claims. Even if her conspiracy claim were not barred, Kelton's conclusory allegations are insufficient to establish a conspiracy, let alone one motivated by gender. Kelton's claims against Mills should be dismissed.

W0060980.1

## II. ARGUMENT

### A. Mills Is Entitled To Qualified Immunity.

Mills incorporates by reference the analysis and argument from Mayer's reply memorandum explaining that Kelton's failure to address the qualified immunity defense asserted by the individual Defendants is tantamount to an admission that they should be dismissed on that basis. (Mayer Reply Mem. at 2)

In any event, Mills's support for and gender-neutral recommendations to the search committee in favor of Goddard (Ex. 78) did not violate any law, much less clearly established law. Kelton cited no authority from any court, let alone the Supreme Court or the Sixth Circuit, that would have put Mills on notice that a non-decisionmaker could be liable for making a gender-neutral recommendation in favor of a respected colleague. Mills is entitled to qualified immunity and all of Kelton's claims against him should be dismissed.

### B. Kelton's Gender Discrimination Claim Against Mills Must Be Dismissed.

#### 1. Kelton has failed to establish a prima facie case.

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton cannot demonstrate that a male became department head or that Mills, who was not on the search committee, took an adverse action against her in connection with the headship search. (Mayer Reply Mem. at 2-3)

#### 2. Kelton cannot establish that Mills's actions were a pretext for gender discrimination.

Kelton claims that Mills discriminated against her on the basis of her gender because he encouraged Goddard to apply for the headship position, campaigned against Kelton, and criticized Kelton in his presentation to the search committee. (Pl. Mem. Opp. at 4, 6-7; Ex. 78)

Mills did prefer Goddard over Kelton, he did campaign against her, and he did criticize her in his presentation to the search committee. Mills had a negative view of Kelton as department head even before Goddard said he would run. (Mills Dep. 19) If no one from his group had run, he would have supported Kelton over the other professors (all but one of whom was male) in her group--he felt she was the "best of what I considered a bad bunch." (Id. at 8, 19) Mills and Williams encouraged Goddard to run--they had recently attained tenure and felt they finally had the chance to speak out. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 13)

Mills supported Goddard because:

> He was a senior faculty member; he has a lot of experience, he has the right values, very professional, very encouraging of research… he understands what the economics profession is about and what professors at research intensive universities ought to be doing.

(Mills Dep. at 21-22) Mills had worked with Goddard on a consulting project and on committees, and discussed academic issues with him. (Id. at 22, 24)[1]

Mills believed that Kelton would continue Gallo's management style. (Id. at 9) In his opinion, she was unwilling to distribute resources fairly and made unilateral decisions. (Id. at 11) He disagreed with the way she assigned financial aid and admitted students. (Id. at 15)

In her memorandum in opposition, Kelton did not attempt to show that Mills's oral or written presentations to the search committee were a pretext for gender discrimination. His oral presentation was critical of Kelton, but criticism by itself is not illegal. Kelton admitted that Mills's written comments to the search committee did not mention gender, that some of his comments did not even refer to Kelton, and that those that did were statements about his

---

[1] Kelton's statement that Mills did not know why he supported Goddard and that he had not worked with him (Pl. Mem. Opp. at 4, n.1) is incorrect.

negative opinion of her managerial style.  (Pl. Resp. Defs. Proposed Findings of Fact ¶ 41)  As Mills's gender-neutral reasons for recommending Goddard instead of Kelton are undisputed, Kelton's gender discrimination claim against him must be dismissed.  See Betkerur v. Aultman Hosp. Assoc., 78 F.3d 1079, 1095 (6th Cir. 1996) (affirming summary judgment for search committee member where the plaintiff offered no evidence indicating that the legitimate, non-discriminatory reason why the search committee member voted for the plaintiff's opponent was pretextual).

Were Mills's criticisms of Kelton motivated by her gender (which they were not), Mills would still win because there is no evidence that the University adopted any of Mills's criticisms in its decision to declare the headship search a failure.  See Betkerur, 78 F.3d at 1097 (finding that there was no evidence suggesting that outside search consultant's report that a candidate was "American born, American trained" was "adopted or relied upon in any way by hospital decisionmakers").

Kelton bases her accusations against Mills largely on two memoranda prepared by Mills and several other professors not in connection with the headship search.  (Pl. Mem. Opp. at 21-22)  Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the two memos, neither of which mentions gender, are not evidence of pretext and are not relevant.

Kelton admitted that:

- Mills and Kelton were good colleagues who got along well  (Pl. Resp. Defs. Proposed Findings of Fact ¶ 8); and

- If Mills had to pick one of the Group A Members as department head, Kelton would have been at the top of his list, because he felt she encouraged research.  (Id.)

These undisputed facts create and reinforce a presumption of non-discrimination on the part of Mills. See Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995).

Kelton conceded that Mills joined in an e-mail to Dean Caruso criticizing all the Group A members, including eight males. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 56) Kelton admitted she had no reason to believe that the views expressed in this e-mail were not the true opinions of Mills and the five other professors. (Kelton Dep. 125-26) This e-mail demonstrates that Mills's recommendation in favor of Goddard was not influenced by gender but by previously existing political disputes within the economics department.

Despite Kelton's mischaracterization of Mills's presentations to the search committee,[2/] she has not offered a scintilla of evidence that anything Mills said or did was motivated by her gender. Kelton's gender discrimination claim against Mills must be dismissed.

    **C.**    **Kelton's Conspiracy Claim Against Mills Must Be Dismissed.**

        **1.**    **The intracorporate conspiracy doctrine bars Kelton's conspiracy claim.**

            **a.**    **The intracorporate conspiracy doctrine applies to conspiracy claims against only individual defendants.**

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the intracorporate conspiracy doctrine applies to the actions of the individual Defendants. (Mayer Reply Mem. at 7)

            **b.**    **Mills acted within the scope of his employment.**

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that conduct is within the scope of employment when it occurs during

---

[2/]    E.g., Kelton says Mills called her "abrasive." (Pl. Mem. Opp. at 7) He actually said she "sends abrasive e-mails." (Ex. 78) Exhibits 4 and 6 are examples of Kelton's e-mails to UC's customers--its students.

the course of working hours, is connected to the business of the employer, and addressed to the proper managerial authorities. (Mayer Reply Mem. at 7-9)

Kelton bases her conspiracy accusations against Mills on the same reasons advanced in support of her gender discrimination claim against him--his support for Goddard and the two memoranda from several professors to Dean Caruso and Department Head Gallo. (Pl. Mem. Opp. at 35; Exs. 13, 15) The remarks in the memos were made during the course of University business, were related to the activities of the economics department, and were forwarded to the appropriate administrative authorities. Mills's actions in supporting Goddard and in joining the two letters were within the scope of his employment as a member of the economics faculty.

Kelton also claims that in both memoranda, Mills "falsely accused" Kelton of "rule violations." (Pl. Mem. Opp. at 35) As explained in Mayer's reply memorandum, the statements in the memoranda are not false and are supported by the testimony of Kelton and others present at the Hewett-Kautz Fund meeting. (Mayer Reply Mem. at 5-6)

Even if the statements in the memorandum were not true, Mills's statements addressed the activities and morale of the economics department and therefore fell within the scope of his employment. (Mayer Reply Mem. at 9)

      **c.** **If Mills acted outside the scope of his employment, all of Kelton's claims fail.**

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton's argument that the individual Defendants acted outside the scope of their employment is fatal to all of her claims. (Mayer Reply Mem. at 9-11)

### d. The independent personal stake exception does not apply.

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the independent personal stake exception does not apply to the actions of the individual Defendants. (Mayer Reply Mem. at 11)

### 2. Kelton failed to present evidence of a conspiracy motivated by gender.

Mills incorporates by reference the argument and analysis from Mayer's reply memorandum (id. at 12) explaining that Kelton's conclusory allegation that the individual Defendants "agree[d] to prevent Dr. Kelton from becoming the Department Head based on considerations of gender" (Pl. Mem. Opp. at 31), unsupported by any record evidence, is insufficient to establish a conspiracy claim. Kelton's conspiracy claim against Mills must be dismissed.

### III. **CONCLUSION**

For each and all of the foregoing reasons, and those set forth in his motion for summary judgment, Mills respectfully requests that this Court grant his motion and dismiss the claims against him.

                        Respectfully submitted,

                        Jim Petro
                        Attorney General of Ohio

By:    s/ Doreen Canton
        Doreen Canton Bar Number 0040394
        Attorney for Defendants
        Taft, Stettinius & Hollister LLP
        425 Walnut Street, Suite 1800
        Cincinnati, Ohio 45202-3957
        Telephone: (513) 381-2838
        Fax: (513) 381-0205
        E-mail: canton@taftlaw.com

OF COUNSEL:

W. Stuart Dornette (0002953)
Kerry P. Hastings (0066871)
Rachel S. Zahniser (0076065)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

Mitchell D. McCrate (0047403)
Associate Counsel
University of Cincinnati
300 Administration Building
Cincinnati, OH 45221-0623

## CERTIFICATE OF SERVICE

      I hereby certify that on October 24, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Marc D. Mezibov, Michael N. Budelsky and Susan E. Brabenec, 920 Fourth & Race Tower, 105 W. Fourth Street, Cincinnati, Ohio 45202.

                                                s/ Doreen Canton
                                                Doreen Canton Bar Number 0040394
                                                Attorney for Defendants
                                                Taft, Stettinius & Hollister LLP
                                                425 Walnut Street, Suite 1800
                                                Cincinnati, Ohio 45202-3957
                                                Telephone: (513) 381-2838
                                                Fax: (513) 381-0205
                                                E-mail: canton@taftlaw.com