UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA M. I. KELTON, | : | Case No. C-1-02-345 |
| | : | |
| Plaintiff, | : | Judge Weber |
| | : | |
| v. | : | |
| | : | **REPLY MEMORANDUM OF** |
| UNIVERSITY OF CINCINNATI, et al., | : | **DEFENDANT HARLAND WHITMORE** |
| | : | **IN SUPPORT OF HIS MOTION FOR** |
| Defendants. | : | **SUMMARY JUDGMENT** |

**I. INTRODUCTION**

Whitmore's motion for summary judgment should be granted. Kelton failed to address Whitmore's qualified immunity defense, effectively admitting that her gender discrimination and conspiracy claims against him should be dismissed. Even if Whitmore were not entitled to qualified immunity, Kelton failed to present a scintilla of evidence supporting her claims against him. Kelton cannot demonstrate a prima facie case of gender discrimination against Whitmore because she cannot establish that a male became department head or that Whitmore, a non-decisionmaker, took an adverse action against her in connection with the headship search. There is no evidence that Whitmore's e-mail empathizing with Kelton and his gender-neutral communications to the Search Committee were a pretext for gender discrimination. Kelton's conspiracy claim against Whitmore is barred by the intracorporate conspiracy doctrine, and her argument that Whitmore acted outside the scope of his employment is without merit and is fatal to all of her claims. Even if her conspiracy claim were not barred, Kelton's conclusory allegations are insufficient to establish a conspiracy, let alone one motivated by gender. Kelton's claims against Whitmore should be dismissed.

W0069466.1

## II. ARGUMENT

### A. Whitmore Is Entitled To Qualified Immunity.

Whitmore incorporates by reference the analysis and argument from Mayer's reply memorandum explaining that Kelton's failure to address the qualified immunity defense asserted by the individual Defendants is tantamount to an admission that they should be dismissed on that basis. (Mayer Reply Mem. at 2)

In any event, Whitmore's gender-neutral communications to the search committee did not violate any law, much less clearly established law. Kelton cited no authority from any court, let alone the Supreme Court or the Sixth Circuit, that would have put Whitmore on notice that a non-decisionmaker could be liable for making gender-neutral comments discussing the strengths and weaknesses of both candidates and not endorsing either candidate. Whitmore is entitled to qualified immunity and all of Kelton's claims against him should be dismissed.

### B. Kelton's Gender Discrimination Claim Against Whitmore Must Be Dismissed.

#### 1. Kelton failed to establish a prima facie case.

Whitmore incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton cannot demonstrate that a male became department head or that Whitmore, who was not on the search committee, took an adverse action against her in connection with the headship search. (Mayer Reply Mem. at 2-3)

## 2. Kelton cannot establish that Whitmore's communications were a pretext for gender discrimination.

Incredibly, Kelton bases her gender discrimination claim against Whitmore on his e-mail empathizing with Kelton. (Pl. Mem. Opp. at 5, 12-13, 19, 35) Kelton bizarrely tries to twist Whitmore's attempt to **encourage her to seek the headship** into evidence of discrimination; Kelton **admitted** Whitmore's benign motivation in providing her this e-mail. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 23) ("I wanted her to run. I didn't want Haynes' memo to discourage her from running.") In this admittedly benign context, Whitmore explained that his comment that "[t]here probably are faculty in this department who would be threatened by a female head" (Ex. 10) was merely empathizing with Kelton's reported sentiments; Kelton **admitted** Whitmore's explanation was true. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 22) Based on her admissions, Kelton cannot plausibly claim that Whitmore's e-mail is evidence of gender discrimination on his part.

Kelton claims that Whitmore sent an e-mail to Howe discouraging him from recommending Kelton as department head and "falsely suggest[ing]" that Kelton was "unethical." (Pl. Mem. Opp. at 35) Whitmore did not discourage Howe from recommending Kelton; rather, he "strongly urge[d] [Howe] to talk candidly with Professor Pal about the matter before making [his] recommendation." (Ex. 71) The "matter" to which Whitmore referred was an altercation between Debashis Pal and Al Berry at a Hewett-Kautz Fund meeting and Kelton's failure to take action in response to Berry's behavior. (Id.) As a result of the Hewett-Kautz episode, Whitmore had "very serious reservations about Professor Kelton becoming our department head." (Id.) Whitmore did not call Kelton "unethical." In fact, he stated that "[t]his is difficult for me because I like Chris and I have had a good working relationship with her." (Id.) In this same e-mail, Whitmore defended Kelton's actions with respect to the graduate

studies committee--the same actions other professors had questioned in a memorandum to Department Head Joseph Gallo. (Id.)[1] Whitmore retracted this e-mail after search committee Chair Steven Howe expressed concerns that the e-mail would aggravate the division between search committee members Berry and Pal. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 43) Whitmore then sent Howe another e-mail assessing the strengths of both Goddard and Kelton and not endorsing either candidate. (Ex. 72)

According to Kelton, Whitmore claimed that Kelton "would be a poor Department Head because she endorsed verbal abuse." (Pl. Mem. Opp. at 22) In their May 19, 2000 memorandum to Dean Joseph Caruso, <u>not</u> the search committee, Whitmore and several other professors expressed concern about the altercation between Pal and Berry at a Hewett-Kautz Fund meeting and stated that "the new Head must not be a person who has condoned Professor Berry's behavior." (Ex. 15) Kelton makes much of the fact that Whitmore was not present at the Hewett-Kautz Fund meeting. (Pl Mem. Opp. at 21 n.14) It is undisputed that Whitmore learned about the incident from Pal and then went to Gallo and Kelton herself, both of whom confirmed Pal's version of the events. (Pl. Resp. Defs. Proposed Findings of Fact ¶ 32) Whitmore felt that

---

[1] Whitmore stated:

> (In her defense, however, I must say that I feel I have been well informed about and agree with her plans for new directions for our graduate program. The graduate program committee did discuss the possibility of adding a specialty in medical economics and the possibility of working out a joint appointment with Pharmacy for a pharmacoeconomist. I do not remember whether we took a formal vote to approve the program. I do not think the entire graduate program committee formally recommended to the econ. dept. faculty that we tell Pharmacy that we liked a particular candidate, but I could be wrong. However, I did agree with Chris as to the best candidate so far.)

(Ex. 71)

Kelton "should have shown some leadership and said, well, at least let's provide some answers to Professor Pal." (Id.) Kelton failed to present any evidence that Whitmore's opinion that she should have demonstrated some leadership during the Hewett-Kautz Fund meeting was false or that his opinion was in any way related to her gender.

In any event, there is no evidence that the University adopted anything Whitmore said in regard to its decision to declare the headship search a failure. This alone requires summary judgment. See Betkerur v. Aultman Hosp. Assoc., 78 F.3d 1079, 1097 (6th Cir. 1995) (finding that there was no evidence suggesting that outside search consultant's report that a candidate was "American born, American trained" was "adopted or relied upon in any way by hospital decisionmakers").

Kelton admitted that:

- Whitmore sat on the department sub-committee reviewing her application for tenure and recommended that she receive tenure (Pl. Resp. Defs. Proposed Findings of Fact ¶ 12); and

- Whitmore wanted her to run for the headship position (Id. ¶ 23).

These undisputed facts create and reinforce a presumption of non-discrimination on the part of Whitmore. See Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995).

Kelton has not offered even a scintilla of evidence that anything Whitmore said or did was motivated by her gender. Without such evidence, Kelton's gender discrimination claim against Whitmore must be dismissed.

**C.    Kelton's Conspiracy Claim Against Whitmore Must Be Dismissed.**

    **1.    The intracorporate conspiracy doctrine bars Kelton's conspiracy claim.**

        **a.    The intracorporate conspiracy doctrine applies to conspiracy claims against only individual defendants.**

Whitmore incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the intracorporate conspiracy doctrine applies to the actions of the individual Defendants. (Mayer Reply Mem. at 7)

        **b.    Whitmore acted within the scope of his employment.**

Kelton bases her conspiracy accusations against Whitmore on the same reasons advanced in support of her gender discrimination claim against him--his e-mail empathizing with Kelton, his e-mail to Howe stating that he had reservations about Kelton but defending her actions as director of the graduate studies program, which was retracted the next day, and the memorandum from several of the individual Defendants to Dean Caruso addressing various departmental issues. (Pl. Mem. Opp. at 35) Whitmore's e-mail empathizing with Kelton's reported sentiments and his attempt to encourage her to run for the headship position cannot be considered evidence of a conspiracy motivated by gender. Whitmore incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Whitmore's communications about Kelton's management style and her failure to support Pal in the Hewett-Kautz Fund meeting were within the scope of his employment as a member of the economics faculty, because those communications took place during the course of University business, were related to the activities of the economics department, and were forwarded to the appropriate administrative authorities--Dean Caruso and search committee Chair Howe. (Mayer Reply Mem. at 7-9)

Even if Whitmore "falsely suggested" that Kelton was "unethical" in his e-mail to Howe (Pl. Mem. Opp. at 35), his communications addressed the activities and morale of the economics department and therefore fell within the scope of his employment. (Mayer Reply Mem. at 9)

        **c.**    **If Whitmore acted outside the scope of his employment, all of Kelton's claims fail.**

Whitmore incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton's argument that the individual Defendants acted outside the scope of their employment is fatal to all of her claims. (Mayer Reply Mem. at 9-11)

        **d.**    **The independent personal stake exception does not apply.**

Whitmore incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the independent personal stake exception does not apply to the actions of the individual Defendants. (Mayer Reply Mem. at 11)

    **2.**    **Kelton failed to present evidence of a conspiracy motivated by gender.**

To establish a conspiracy claim under § 1985(3), Kelton must demonstrate a conspiracy motivated by a class-based animus, such as gender. <u>Johnson v. Hills & Dales Gen. Hosp.</u>, 40 F.3d 837, 839 (6th Cir. 1994). Kelton failed to present a scintilla of evidence that Whitmore entered into a conspiracy, much less one motivated by gender. The evidence demonstrates that Whitmore acted independently from the other individual Defendants. He personally prepared his e-mail to Howe without consulting any other individual Defendant. Whitmore even sent Goddard an e-mail indicating that he no longer wished to be involved in "department politics" and that he "prefer[red] not to sign the proposed letter to the Dean because [he] truly no longer care[d] what happens within the department." (Pl. Resp. Defs. Proposed Findings of Fact ¶ 55) Whitmore was the only individual Defendant who did not join in the e-mail to Dean Caruso

explaining why Kelton and nine other economics faculty members should not be appointed acting head of the department.  (Id. ¶ 56)

Kelton's conclusory allegation that the individual Defendants "agree[d] to prevent Dr. Kelton from becoming the Department Head based on considerations of gender" (Pl. Mem. Opp. at 31), unsupported by any record evidence, is insufficient to establish a conspiracy claim.  See Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987) ("[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state" a conspiracy claim).  Kelton's conspiracy claim against Whitmore must be dismissed.

### III.  **CONCLUSION**

For each and all of the foregoing reasons, and those set forth in his motion for summary judgment, Whitmore respectfully requests that this Court grant his motion and dismiss the claims against him.

Respectfully submitted,

Jim Petro
Attorney General of Ohio

By:   s/ Doreen Canton
     Doreen Canton Bar Number 0040394
     Attorney for Defendants
     Taft, Stettinius & Hollister LLP
     425 Walnut Street, Suite 1800
     Cincinnati, Ohio 45202-3957
     Telephone:  (513) 381-2838
     Fax:  (513) 381-0205
     E-mail:  canton@taftlaw.com

OF COUNSEL:

W. Stuart Dornette (0002953)
Kerry P. Hastings (0066871)
Rachel S. Zahniser (0076065)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

Mitchell D. McCrate (0047403)
Associate Counsel
University of Cincinnati
300 Administration Building
Cincinnati, OH 45221-0623

**CERTIFICATE OF SERVICE**

        I hereby certify that on October 24, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Marc D. Mezibov, Michael N. Budelsky and Susan E. Brabenec, 920 Fourth & Race Tower, 105 W. Fourth Street, Cincinnati, Ohio 45202.

                                      s/ Doreen Canton
                                      Doreen Canton Bar Number 0040394
                                      Attorney for Defendants
                                      Taft, Stettinius & Hollister LLP
                                      425 Walnut Street, Suite 1800
                                      Cincinnati, Ohio 45202-3957
                                      Telephone: (513) 381-2838
                                      Fax: (513) 381-0205
                                      E-mail: canton@taftlaw.com