UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA M. I. KELTON, | : | Case No. C-1-02-345 |
| | : | |
| Plaintiff, | : | Judge Weber |
| | : | |
| v. | : | |
| | : | **REPLY MEMORANDUM OF** |
| UNIVERSITY OF CINCINNATI, et al., | : | **DEFENDANT NICOLAS WILLIAMS** |
| | : | **IN SUPPORT OF HIS MOTION FOR** |
| Defendants. | : | **SUMMARY JUDGMENT** |

**I. <u>INTRODUCTION</u>**

Williams's motion for summary judgment should be granted. Kelton failed to address Williams's qualified immunity defense, effectively admitting that her gender discrimination and conspiracy claims against him should be dismissed. Even if Williams were not entitled to qualified immunity, Kelton failed to present a scintilla of evidence supporting her claims against him. Kelton cannot demonstrate a prima facie case of gender discrimination against Williams because she cannot establish that a male became department head or that Williams, a non-decisionmaker, took an adverse action against her in connection with the headship search. There is no evidence that Williams's gender-neutral support for Goddard was a pretext for gender discrimination. Kelton's conspiracy claim against Williams is barred by the intracorporate conspiracy doctrine, and her argument that Williams acted outside the scope of his employment is without merit and is fatal to all of her claims. Even if her conspiracy claim were not barred, Kelton's conclusory allegations are insufficient to establish a conspiracy, let alone one motivated by gender. Kelton's claims against Williams should be dismissed.

## II.  ARGUMENT

### A.  Williams Is Entitled To Qualified Immunity.

Williams incorporates by reference the analysis and argument from Mayer's reply memorandum explaining that Kelton's failure to address the qualified immunity defense asserted by the individual Defendants is tantamount to an admission that they should be dismissed on that basis.  (Mayer Reply Mem. at 2)

In any event, Williams's support for Goddard and gender-neutral presentation to the search committee did not violate any law, much less clearly established law.  Kelton cited no authority from any court, let alone the Supreme Court or the Sixth Circuit, that would have put Williams on notice that a non-decisionmaker could be liable for making a gender-neutral recommendation in favor of a well-respected colleague.  Williams is entitled to qualified immunity and all of Kelton's claims against him should be dismissed.

### B.  Kelton's Gender Discrimination Claim Against Williams Must Be Dismissed.

#### 1.  Kelton failed to establish a prima facie case.

Williams incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton cannot demonstrate that a male became department head or that Williams, who was not on the search committee, took an adverse action against her in connection with the headship search.  (Mayer Reply Mem. at 2-3)

#### 2.  Kelton cannot establish that Williams's actions were a pretext for gender discrimination.

Kelton claims Williams intentionally discriminated against her on the basis of her gender because he encouraged Goddard to apply for the headship position, influenced Pal to vote for Goddard, and spread "false rumors" that she had mishandled the graduate studies program.

(Pl. Mem. Opp. at 4, 8, 20)  Kelton cites Goddard's testimony that Williams was concerned about Kelton's management style, but there is no evidence that Williams spread false rumors about Kelton.  Williams preferred Goddard over Kelton, encouraged Goddard to apply, and influenced Pal.  Williams articulated his reasons at the time--he wanted the person who would most help achieve the goals of "the research arm of the department." (Ex. 69)  He felt he could finally "speak up" about the future of the department because he had recently achieved tenure. (Mills Dep. 21)

Kelton did not address Williams's gender-neutral recommendation for Goddard and did not attempt to show that his recommendation was a pretext for gender discrimination.  She admitted Williams gave an "even-handed" presentation to the search committee that pointed out Kelton's strengths as well as Goddard's.  (Pl. Resp. Defs. Proposed Findings of Fact ¶ 40)

Kelton admitted that Williams recruited her to the University.  (Id. at ¶ 7)  This undisputed fact creates and reinforces a presumption of non-discrimination on the part of Williams.  See Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir. 1995).

Kelton also conceded that Williams joined in an e-mail to Dean Caruso criticizing all the Group A members, including eight males.  (Pl. Resp. Defs. Proposed Findings of Fact ¶ 56) Kelton admitted she had no reason to believe that the views expressed in this e-mail were not the true opinions of Williams and the five other professors.  (Kelton Dep. 125-26)  This e-mail demonstrates that Williams's recommendation in favor of Goddard was not influenced by gender but by previously existing political disputes within the economics department.

Kelton has not offered even a scintilla of evidence that anything Williams said or did was motivated by her gender.  Without such evidence, Kelton's gender discrimination claim against Williams must be dismissed.

      **C.**    **Kelton's Conspiracy Claim Against Williams Must Be Dismissed.**

           **1.**    **The intracorporate conspiracy doctrine bars Kelton's conspiracy claim.**

                **a.**    **The intracorporate conspiracy doctrine applies to conspiracy claims against only individual defendants.**

Williams incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the intracorporate conspiracy doctrine applies to the actions of the individual Defendants.  (Mayer Reply Mem. at 7)

                **b.**    **Williams acted within the scope of his employment.**

Kelton bases her conspiracy accusations against Williams on the same reasons advanced in support of her gender discrimination claim against him.  (Pl. Mem. Opp. at 34-35)  Williams incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Williams's concerns about Kelton's management style and his support for Goddard were within the scope of his employment as a member of the economics faculty, because those actions took place during the course of University business, and were related to the activities of the economics department.  (Mayer Reply Mem. at 7-9)

Even if Williams's statements about his opinion of Kelton's management style were not true, his statements addressed the activities and morale of the economics department and therefore fell within the scope of his employment.  (Mayer Reply Mem. at 9)

### c. If Williams acted outside the scope of his employment, all of Kelton's claims fail.

Williams incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that Kelton's argument that the individual Defendants acted outside the scope of their employment is fatal to all of her claims. (Mayer Reply Mem. at 9-11)

### d. The independent personal stake exception does not apply.

Williams incorporates by reference the argument and analysis from Mayer's reply memorandum explaining that the independent personal stake exception does not apply to the actions of the individual Defendants. (Mayer Reply Mem. at 11)

## 2. Kelton failed to present evidence of a conspiracy motivated by gender.

Williams incorporates by reference the argument and analysis from Mayer's reply memorandum (id. at 12) explaining that Kelton's conclusory allegation that the individual Defendants "agree[d] to prevent Dr. Kelton from becoming the Department Head based on considerations of gender" (Pl. Mem. Opp. at 31), unsupported by any record evidence, is insufficient to establish a conspiracy claim. Kelton's conspiracy claim against Williams must be dismissed.

### III. **CONCLUSION**

For each and all of the foregoing reasons, and those set forth in his motion for summary judgment, Williams respectfully requests that this Court grant his motion and dismiss the claims against him.

                                              Respectfully submitted,

                                              Jim Petro
                                              Attorney General of Ohio

                                  By:    s/ Doreen Canton
                                              Doreen Canton Bar Number 0040394
                                              Attorney for Defendants
                                              Taft, Stettinius & Hollister LLP
                                              425 Walnut Street, Suite 1800
                                              Cincinnati, Ohio 45202-3957
                                              Telephone: (513) 381-2838
                                              Fax: (513) 381-0205
                                              E-mail: canton@taftlaw.com

OF COUNSEL:

W. Stuart Dornette (0002953)
Kerry P. Hastings (0066871)
Rachel S. Zahniser (0076065)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957

Mitchell D. McCrate (0047403)
Associate Counsel
University of Cincinnati
300 Administration Building
Cincinnati, OH 45221-0623

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2003, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:  Marc D. Mezibov, Michael N. Budelsky and Susan E. Brabenec, 920 Fourth & Race Tower, 105 W. Fourth Street, Cincinnati, Ohio  45202.

                                                 s/ Doreen Canton
                                               Doreen Canton Bar Number 0040394
Attorney for Defendants
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Telephone:  (513) 381-2838
Fax:  (513) 381-0205
E-mail:  canton@taftlaw.com

W0065571.1