2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 17

The Supreme Court, in *Russello v. United States,* confirmed its view against narrowly construing the meaning of a statute when the plain language unambiguously expressed its legislative purpose and intent. 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). In determining the proper applicability of the word "interest" as used in 18 U.S.C. § 1963(a)(1) in the context of a RICO case, the Supreme Court held that ' "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." ' *Russello,* 464 U.S. at 23 (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972). Specifically, in discussing the particular statutory provision at issue, the Court noted that "[t]he argument for a narrow construction of § 1963(a)(1) is refuted by the language of the succeeding subsection (a)(2). The former speaks broadly of 'any interest ... acquired,' while the latter reaches only 'any interest in ... any enterprise which [the defendant] has established [,] operated, controlled, conducted or participated in the conduct of in violation of section 1962.' " *Id.* (quoting 18 U.S.C. § 1962). The Court went on to express its belief that if Congress had intended to restrict § 1963(a)(1), it presumably would have done so expressly as it did in the immediately following subsection. *Id.*

Contrary to the majority opinion, this Court has already embraced this logic. In *Lynch v. Johns-Manville Sales Corp.,* we held that when looking to stay proceedings in a Chapter 11 bankruptcy context, a solvent co-defendant may not use the automatic stay provision in 11 U.S.C. § 362(a), when the said provision facially stays proceedings "against the debtor," and fails to suggest that these rights may be invoked by any one other than the defendant. 710 F.2d 1194, 1198 (6th Cir.1983). The Court noted "[it] is a fundamental rule of statutory construction that inclusion in one part of a congressional scheme of that which is excluded in another part reflects a congressional intent that the exclusion was not inadvertent." *Id.* at 1197.

The Supreme Court case, *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), views § 704(a)'s legislative intent in this manner. In *Robinson,* the plaintiff sued his former employer, alleging that it had retaliated against him by giving him a negative employment reference to a potential employer. *Id.* There was no allegation that the former employer itself had made an ultimate employment decision, or that it took any adverse action that materially altered the plaintiff's job responsibilities. (Indeed, it could not have done so, given that the plaintiff was no longer working for the employer at the time.) Nevertheless, a unanimous Court allowed the plaintiff's claim to proceed after holding that former employees may challenge retaliatory actions. *Id.* at 346. Although *Robinson* dealt specifically with the issue of determining who is an "employee" for purposes of Title VII's anti-retaliation provision (as opposed to what constitutes an adverse employment action), its reasoning is pertinent: a former employee counts as an employee within the meaning of § 2000e-3(a), because otherwise an employee could be fired in retaliation and not be able to sue. In so holding, the Court noted that an alternative statutory interpretation would have undermined or vitiated one of Title VII's most important purposes--maintaining "unfettered access to statutory remedial mechanisms." *Id.*

*19 In line with the teachings of *Robinson* and the Supreme Court's view that § 704(a) should not be limited in its construction, this Court, in *EEOC v. Ohio Edison,* also interpreted § 704(a) to be a broad anti-retaliation provision that should reach as far as its intended protections allow. 7 F.3d 541, 545-46 (6th Cir.1993) (holding that Title VII's protections against retaliation extended to situations where an employee was discriminated against because his representative opposed an unlawful employment practice). In reaching this result, we stated that "[i]n enacting section 2000e-3, Congress unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation." *Id .* at *543.* We relied, in part, on the Supreme Court's analysis of statutory interpretation in *NLRB v. Scrivener,* which held that "the language of a statute should not be read strictly, but should 'be read more broadly' if such a reading was also consistent with the 'purpose and objective' of the prohibition made illegal by the statute." *Id.* at 545 (quoting *NLRB v. Scrivener,* 405 U.S. 117, 122, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972)).

Additionally in *Mattei v. Mattei,* this Court once again chose to interpret the Title VII's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726                                                                                                Page 18
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

anti-retaliation provision broadly, as to prohibit *any kind* of adverse action. 126 F.3d 794, 798 (6th Cir.1997). There, we were asked to give meaning to the concept of discrimination as it is used in the Employee Retirement Income Security Act ("ERISA"). *Id.* The ERISA provision at issue was § 510 which made it unlawful, under certain circumstances, to "discriminate against" a participant or beneficiary. *Id.* at 797 (quoting 29 U.S.C § 1140). The majority found guidance in Title VII's and the ADEA's interpretive use of the phrase "discriminate against," noting that neither of these Acts defined this phrase, but rather their respective provisions "are consistently interpreted ... to forbid an employer to take *any kind* of adverse action against an individual because he has engaged in [ ] protected activity...." *Id.* at 806 (emphasis in original). We concluded that because the ERISA anti-retaliation provision at issue used the same phrase ("discriminate against") as the Title VII and ADEA provisions, and was enacted after them, it was proper to assume that Congress intended for the ERISA provision "to have the same basic meaning." *Id.* at 806.

Even more recently, the Supreme Court has cautioned courts against unwarranted limitations on otherwise unambiguous statutory text. In *Desert Palace, Inc. v. Costa,* the Supreme Court rejected the approach of many circuits to limit a Title VII plaintiff's ability to receive a mixed-motive jury instruction in cases where direct evidence of discrimination had not been submitted at trial, determining that a "direct evidence" requirement "is inconsistent with the text of [42 U.S.C. § 2000e-2(m) ]." 539 U.S. 90, 123 S.Ct. 2148, 2153, 156 L.Ed.2d 84 (2003). The Court reasoned, in pertinent part, that the § 2000e- 2(m) "unambiguously states that a plaintiff need only 'demonstrat[e]' that an employer used a forbidden consideration with respect to 'any employment practice.' " *Id.* On its face, "the statute does not mention, much less require, that a plaintiff make a heightened showing through direct evidence." *Id.* The Court was further persuaded by a review of the term "demonstrates," which Title VII, as amended in the 1991 Civil Rights Act, defined as "to 'mee[t] the burdens of production and persuasion.' " *Id.* at 2154 (citing 42 U.S.C. § 2000e(m)). The Court added, "If Congress intended the term 'demonstrates' to require that the 'burdens of production and persuasion' be met by direct evidence or some other heightened showing, it could have made that intent clear by including language to that effect in § 2000e(m). Its failure to do so is significant, for Congress has been unequivocal when imposing heightened proof requirements in other circumstances, including in other provisions of Title 42." *Id.* at 2154. *Desert Palace* is instructive, inasmuch as it cautioned courts not to read limitations into statutory language, particularly where Congress expressly limited such terms in other provisions of the same title yet declined to do so in the presently reviewed statutory provision. We are faced with precisely the same situation. Section 703(a) expressly limited the scope of "discriminate" to actions relating to the employee's "compensation, terms, conditions, or privileges of employment." Section 704(a) could just as easily have limited its scope of "discriminate," yet chose not to do so. It is abundantly clear that the lessons of *Desert Palace* dictate that we not read such limitations into § 704(a) now.

*2. Administrative Agency Support*

\*20 In addition to support from the statutory text and Supreme Court case law, there is administrative agency support for the "reasonably likely to deter" view, inasmuch as the EEOC has interpreted 42 U.S.C. § 2000e-3 in this manner. While it is true that the EEOC Compliance Manual on Retaliation is not binding authority, the guidelines nevertheless "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). It is persuasive authority. According to the EEOC, an "adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998). Under this approach, a number of retaliatory actions which are not expressly encompassed in a "materially adverse" standard would fall into the ambit of a § 704(a) violation, so long as they are reasonably likely to deter employees from engaging in protected activity. The EEOC's test is not unlimited however, for instance, "petty slights and trivial annoyances are not

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 19

actionable, as they are not likely to deter protected activity." EEOC Compliance Manual Section 8, "Retaliation," 8-14. As the Ninth Circuit observed, the focus is not on the "ultimate effects of each employment action," but rather on the "deterrent effects." *Ray*, 217 F.3d at 1243. Given the primary purposes of Title VII's anti-retaliation provision, this is where the emphasis properly lies.

*3. Policy Considerations*

From a policy (and logical) perspective, many factors support an interpretation of adverse employment action that extends beyond the boundaries of an employment decision that materially affects the terms and conditions of employment.

As noted above, a "materially adverse" standard would undermine the driving force behind § 704(a), which is to maintain "unfettered access to statutory remedial mechanisms." *Robinson*, 519 U.S. at 346. This Court has similarly observed that Congress, in enacting Title VII's anti-retaliation provision, " 'unmistakably intended to ensure that no person would be deterred from exercising his rights under Title VII by the threat of discriminatory retaliation.' " *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 543 (6th Cir.1993).

Indeed, the "materially adverse" rule would allow many types of retaliatory actions to go completely unaddressed and unpunished. For instance, the D.C. Circuit has held that negative job references to prospective employers and cancelling public events honoring an employee constitute retaliatory behavior, even though such retaliatory actions do not affect the terms and conditions of one's employment. *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331 (D.C.Cir.1991). The "materially adverse" rule does not make clear whether such adverse behavior on an employer's part would fall within the ambit of § 704(a). It also seems to leave open the issue of retaliatory harassment. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998) (recognizing the validity of a § 704(a) retaliatory harassment claim).

*21 Contrary to the majority's position, the Ninth Circuit's "reasonably like to deter" standard adequately addresses the many varied forms of retaliation while safeguarding against a slippery slope effect by disallowing employees from litigating trivial annoyances. The inquiry would not be whether any adverse action has been taken but whether, as a matter of law, the adverse action would deter a reasonable employee from engaging in protected activity. This ferrets out suits alleging frivolous harms, while maintaining suits for very deleterious actions such as supervisor harassment. Moreover, there are no indications that the broad rules still employed in the Ninth, Tenth, and Eleventh Circuits [FN1] have opened unmanageable floodgates to aggrieved Title VII plaintiffs.

B. Why the Majority Opinion Incorrectly Rejected the "Reasonably Likely to Deter" Rule

Notwithstanding legislative, Supreme Court, and administrative support for a broad rule, the majority rejects the "reasonably likely to deter" standard, citing reasons that are less than persuasive. The majority suggests that the "reasonably likely to deter" standard is too broad. Yet the rule is no broader than the statutory language requires; nor is it any broader than that which is utilized in tort cases, which often involves a "case-by-case" analysis when compelling courts to employ a "reasonable person" standard in determining what constitutes a duty of care. The reasonable person standard is readily understandable, is not burdensome and is commonly used in legal discourse. [FN2]

In fact, this Court, in *Thaddeus-X v. Blatter*, previously embraced such an objective standard which the majority now claims to be unreasonable. 175 F.3d 378, 396 (6th Cir.1999) (en banc). In *Thaddeus-X*, a case involving a § 1983 action brought by the state inmates against prison officials based on alleged retaliation, we adopted an objective standard in determining what constitutes an "adverse action." *Id.* at 396. In determining "whether actions of lesser severity merit being deemed 'adverse' for purposes of a retaliation claim, we adopt[ed] the standard suggested by Judge Posner in *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982), that an adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id.* We reasoned that "[t]he benefits of such a standard are that it is an objective inquiry, capable of being tailored to the different circumstances in which retaliation claims arise, and capable of screening [out] the most trivial

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726                                                                                                          Page 20
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

of actions from constitutional cognizance." *Id.* at 398.

Moreover, The Ninth, Tenth, and Eleventh Circuits all employ such an objective standard, specifically in the Title VII context, and by so doing, none of the Circuits appear to have had any difficulty in determining what is adverse and what is frivolous. *See, e.g., Doe v. Dekalb County School Dist.,* 145 F.3d 1441, 1449 (11th Cir.1998) (taking an "objective approach" to its case-by-case standard).

*22 Furthermore, retaliation requires a broad rule because retaliation can take many forms, perhaps more than Congress at the time of its drafting could think of or reasonably anticipate. Nevertheless, it is not the function of this Court to graft its own policy values onto a statute; rather, it is this Court's responsibility to discern Congress' legislative intent in enacting the statute. In other words, we must determine whether Congress, not this Court, would envision a plaintiff like Sheila White receiving relief from the retaliatory actions allegedly perpetrated against her by Burlington Northern. Congress' intent is manifest: to provide employees who have been victimized by discrimination with access to appropriate statutory remedies under Title VII. *Robinson,* 519 U.S. at 346.

The majority's approach would utilize the same standard for §§ 703 and 704 so that it would not be necessary to undertake individual reviews under the separate sections of the statute when cases arise. This approach similarly is unavailing since Title VII 's statutory language indicates that Congress *intended* for courts to treat general discrimination differently than retaliatory discrimination. Indeed, the recent Supreme Court case of *Desert Palace* emphasized the importance of statutory construction and the significance of statutory language as the starting point for a court's analysis. 123 S.Ct. at 2153. Moreover, different purposes are involved here and it is logical that the two sections would be treated differently. Section 703(a) of Title VII never expected to shield protected groups from every little slight they encounter; its purpose was to assist in getting discriminated-against plaintiffs into the American workforce and to keep them there. As far as retaliation is concerned, congressional intent was clear: to provide "unfettered access to statutory remedial mechanisms." *Robinson,* 519 U.S. at 346.

Contrary to the majority's suggestion, the rule on adverse employment actions to which the majority opinion adheres is quite ambiguous. In an attempt to obviate the need for a court's case-by-case determination of what actions by an employer would be "reasonably likely to deter" an employee from engaging in protected activity, the majority points to this Court's case law regarding what constitutes a "material adverse employment action." The majority relies on *Kocsis v. Multi-Care Management, Inc.,* which requires courts to look to "indices unique to a particular situation," when considering whether or not an employment action is materially adverse. 97 F.3d 876, 886 (6th Cir.1996). This approach ultimately requires a case-by-case review to determine what is "unique" and what is not in each "particular situation." Accordingly, if the goal is to provide guidance while making individual review obsolete, it would be more advantageous to utilize a better defined inquiry than that of *Kocsis* ' "indices unique to a particular situation." This is particularly so when there is an alternative approach available which would also advance Title VII's goal of equal access to its protections under the law. In the present case, the majority opinion concluded that the forklift transfer constituted an adverse employment action by classifying Burlington Northern's action as an example of "indices unique to a particular situation." While that may satisfactorily dispose of the present case, the majority opinion leaves unclear what other types of adverse actions would fall within the ambit of this category, absent a better delineation of the category. As a result, employers like Burlington Northern could continue to hide behind mere technicalities and claim that other deleterious harms not encompassed in today's ruling, such as employer-sanctioned retaliatory harassment, do not qualify as adverse employment actions when the employee does not experience a demotion or a material change of duties.

*23 The majority suggests that the EEOC's position, in advocating the "reasonably likely to deter" standard, is inconsistent with its concession that legally cognizable adverse action should not encompass trivial slights. Yet no inconsistency is apparent. It is logical that a person pursuing solutions prescribed by EEOC standards would reasonably expect some backlash, in the form of a limited number of negative consequences, some unhappy colleagues and perhaps even some

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726                                                                                  Page 21
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

ostracism. The EEOC's recommendation, however, allows redress only for those plaintiffs who can show that such retaliatory actions would reasonably deter the charging party from engaging in protected activity. EEOC Compliance Manual § 8, "Retaliation," ¶ 8008 (1998). The majority essentially seeks to dismiss the EEOC's approach because it supposedly lacks safeguards against trivial and petty allegations; however, by purporting to exclude trivial and unsubstantiated allegations in order to define the "adverse- employment-action element" narrowly so as not to frustrate the purpose of Title VII, the majority actually impedes Title VII 's effectiveness.

Moreover, the majority suggests that the "materially adverse" requirement, "properly interpreted ... accomplishes [§ 704(a)'s purposes] while appropriately counterbalancing the need to prevent lawsuits based upon trivialities" and that the "indices ... unique to a particular situation" standard accurately captures all other non-trivial actions taken against the employee. Yet *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999), which utilized the "materially adverse" standard, rejected the employee's argument that her unwarranted negative job evaluation constituted an adverse employment action simply because it was not accompanied by monetary loss or anything else falling into the penumbra of adverse actions listed in *Kocsis,* 97 F.3d at 886. In other words, the "materially adverse" standard was ineffective in *Hollins,* because a negative job evaluation is *not* trivial; it is tangible. It is a black mark on one's record that can have severe future consequences for an employee, inasmuch as an employer can use the unwarranted negative job evaluation to deny the employee future promotions. Similarly, it leaves unaddressed such other deleterious harms such as employer-sanctioned retaliatory harassment. The *Hollins* court made no attempt to utilize the "unique indices" category in order to afford the plaintiff relief. 188 F.3d at 662.

What the majority evidently intends (but fails to state expressly) is that it is unwilling to consider actionable a wide variety of non-trivial, tangible adverse employment actions in order to limit the number of legitimate, legally cognizable claims that can be filed by aggrieved employees. There is no other apparent reason for its analysis.

Finally, the majority also attempts to rely in part on the Supreme Court decision, *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). However, such reliance is also misplaced. In *Burlington,* the Supreme Court, in devising an agency principle to govern employer liability for a supervisor's harassment of an employee, observed that an employer is always liable for a discriminatory "tangible employment action." The Court distinguished tangible employment actions from actions not obviously attributable to the employer, defining tangible employment actions as "the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id.* at 762. A tangible employment action "requires an official act of the enterprise, a company act," and would include such acts "as discharge, demotion, or undesirable reassignment." *Id.* at 765. Elsewhere in the opinion the Court observed that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington,* 524 U.S. at 761. However, *Burlington* addressed Title VII's § 703(a), not § 704(a) and, as discussed earlier, the respective scopes of § 703(a) and 704(a) necessarily differ. [FN3]

C. Conclusion

*24 In 1999, a panel of this Court held that an adverse employment action, for purposes of a Title VII retaliation claim, must materially affect the terms and conditions of the plaintiff's employment. *Hollins,* 188 F.3d at 662. Our grant of the petition for rehearing *en banc* provided this Court with an opportunity to reconsider the validity of *Hollins'* unreasoned importation of § 703(a)'s definition of an "adverse employment action" into § 704(a) and to clarify what actions are sufficiently adverse with respect to retaliation claims. A traditional statutory analysis and recognition of Title VII's legislative intent does not dictate the majority's continuing adherence to the "materially adverse" standard, and the rule set forth by the majority fails to provide the clarity desperately needed in this pervasive area of litigation. The lack of clarity in the majority's approach could result in more court decisions against true victims of § 704(a) retaliation because the employer's retaliatory actions conveniently

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726 Page 22
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

manage to elude the confines of the "materially adverse" definition. Instead of following the majority approach, I would hold that the retaliatory actions Burlington Northern took against White constituted adverse employment actions because such actions are reasonably likely to deter an employee from engaging in protected activity.

SUTTON, Circuit Judge, concurring in part and dissenting in part.

CONCURRING IN PART, DISSENTING IN PART

I agree with the majority's treatment of "adverse employment actions" under Title VII, and accordingly join Parts I-III of its opinion in full. I respectfully dissent, however, from the majority's resolution of the punitive damages issues, and accordingly write separately to explain my disagreement with Parts IV-V of the Court's opinion.

At the trial in this case, the district court instructed the jury that it may award punitive damages under Title VII only if the plaintiff proved that she was entitled to them by "clear and convincing" proof. In arguing that the district court erred in this respect and in contending that a punitive damages claim may be proved by a "preponderance" of the evidence under Title VII, the plaintiff relies on two United States Supreme Court decisions and one court of appeals decision. Whether considered together or singly, however, these cases do not support the plaintiff's position.

The first case, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), holds that "circumstantial" evidence, in addition to "direct" evidence, may be used to prove discrimination in a Title VII mixed-motive case. That holding, however, does not answer today's question since circumstantial evidence may be used to prove facts in cases that require a preponderance of the evidence *and* cases that require proof beyond a reasonable doubt, including criminal cases. See id. at 2154 ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."). In reaching its circumstantial-evidence conclusion, it is true, *Desert Palace* noted that Congress's "failure" to specify that only "direct" evidence could be used to prove discrimination was "significant, for Congress has been unequivocal when imposing heightened proof requirements in other circumstances, including in other provisions of Title 42." Id. But that mode of analysis bears on our inquiry only if punitive damages represent a form of conventional relief in the same way that circumstantial evidence represents a form of conventional proof. In my view, that is not the case and accordingly *Desert Palace* does not advance the point. If punitive damages are not a conventional remedy, Congress's "failure" to speak to the question would suggest that the burden of proof traditionally applied to unconventional remedies in general or punitive damages in particular should be used.

*25 Two months before the Court decided *Desert Palace,* it made clear that punitive damages are not a conventional remedy. In *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1519-20, 155 L.Ed.2d 585 (2003), the Court explained that punitive damages and compensatory damages "serve different purposes," that punitive damages "are aimed at deterrence and retribution" and "serve the same purposes as criminal penalties," and that special constitutional rules of review apply to such awards. If there is a lesson to be drawn from *Desert Palace* and *State Farm,* it would seem to be that a punitive damages claim represents an unconventional form of relief, which deserves a heightened rather than a run-of-the-mill standard of proof.

The two other cases upon which the plaintiff relies are no more helpful in establishing that a preponderance standard applies to punitive damages claims. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion), also concerned an issue of conventional relief (namely, the quantum of proof in Title VII mixed-motive cases), not an issue related to punitive damages. Id . at 253 ("Only rarely have we required clear and convincing proof where the action defended against seeks only conventional relief."). In saying that "[c]onventional rules of civil litigation generally apply in Title VII cases," id., the plurality of course did not establish that these conventional rules apply to requests for unconventional relief, and if anything suggested just the opposite.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726                                                                                                    Page 23
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

*Karnes v. SCI Colorado Funeral Services, Inc.*, 162 F.3d 1077 (10th Cir.1998), is even less helpful. In that case, the defendant argued that the higher burden of proof for punitive damages claims *under Colorado law* should apply to Title VII claims. The court disagreed, concluding that state law does not control the answer to the question, then summarily (and mistakenly) relied on *Price Waterhouse* to say that a preponderance standard applies. *Id.* at 1080-81.

It is one thing, I recognize, to say that the cited cases do not answer the question; it is another to determine the answer. In the plaintiff's defense, the statute does not give us a lot to work with in determining what Congress meant. As an initial matter, the statute itself fails to specify a burden of proof, stating only that a plaintiff may recover punitive damages if she "demonstrates" that the defendant intentionally engaged in discriminatory practices. 42 U.S.C. § 1981a(b)(1). In a later subchapter, Congress defines "demonstrates" unhelpfully to mean "meets the burdens of production and persuasion," *id.* § 2000e(m), a definition that chases the tail of the initial inquiry. Nor does the context in which the relevant words appear or the legislative history to the Civil Rights Act of 1991 offer any other insights into the appropriate burden of proof. Pub.L. No. 102-166, § 102, 105 Stat. 1072.

Under these circumstances, it is appropriate to consider other indicators of statutory meaning, analogous Supreme Court precedents and relevant state laws predating the legislation. *See Steadman v. SEC*, 450 U.S. 91, 95, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981) ("Where Congress has not prescribed the degree of proof which must be adduced ... this Court has felt at liberty to prescribe the standard, for '[i]t is the kind of question which has traditionally been left to the judiciary to resolve.' ") (quoting *Woodby v. INS*, 385 U.S. 276, 284, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)); *see also North Star Steel Co. v. Thomas*, 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents ... and that it expect[s] its enactment[s] to be interpreted in conformity with them.") (citations and quotations omitted); *Nishikawa v. Dulles*, 356 U.S. 129, 135, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958) (requiring a clear and convincing standard of proof for voluntary expatriation in the absence of congressional guidance and in the light of analogous Supreme Court precedents); *cf. Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("A majority of the States have concluded that a 'clear and convincing evidence' standard of proof strikes a fair balance [in parental-rights termination cases]. We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process."); *Addington v. Texas*, 441 U.S. 418, 431-32, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) ("We note that 20 states, most by statute, employ the standard of 'clear and convincing' evidence; 3 states use 'clear, cogent, and convincing' evidence; and 2 states require 'clear, unequivocal and convincing' evidence.") (footnotes and emphasis omitted).

*26 By 1991, when Congress authorized punitive damages in Title VII claims, two Supreme Court cases had intimated that a clear and convincing standard ought to apply to punitive damages claims. In *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), decided before Congress amended Title VII, the Court noted that "[t]here is much to be said in favor of a State's requiring, as many do, a standard of 'clear and convincing evidence' or, even, 'beyond a reasonable doubt' " for punitive damages. *Id.* at 23 n. 11 (citations omitted). Two years earlier, Justice Brennan noted that exceptions exist to the preponderance of the evidence standard "when the government seeks to take unusual coercive action-- action more dramatic than entering an award of money damages or other *conventional relief.*" *Price Waterhouse*, 490 U.S. at 253 (plurality opinion) (emphasis added).

In analogous settings before 1991, the Supreme Court also had adopted a clear and convincing evidence standard for civil cases involving unconventional relief--in the face of congressional silence about the appropriate burden of proof. In *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), the Supreme Court observed that "Congress ha[d] not addressed itself [in the Immigration and Nationality Act] to the question of what degree of proof is required in deportation proceedings," then observed that this is "the kind of question which has traditionally been left to the judiciary to resolve." *Id.* at 284. Reasoning that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

Page 24

deportation proceedings fall somewhere between ordinary civil litigation and criminal litigation, the Court held that "clear, unequivocal, and convincing evidence" must support a deportation order--the same burden used in analogous cases involving civil fraud, expatriation, adultery, illegitimacy, lost wills and oral contracts. *Id.* at 285 & n. 18. *Compare Nishikawa,* 356 U.S. at 135 (holding that, in the face of congressional silence on the question, proof of an act of expatriation must be by clear and convincing evidence), *with Vance v. Terrazas,* 444 U.S. 252, 265, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980) (upholding a preponderance of the evidence standard specified by Congress after *Nishikawa* ).

Supreme Court decisions analogizing punitive damages to criminal penalties also suggest that a higher burden of proof ought to apply here. *See State Farm,* 123 S.Ct. at 1519-20 ("[P]unitive damages ... are aimed at deterrence and retribution," and "serve the same purposes as criminal penalties."); *id.* at 1521 ("It should be presumed that a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability ... is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor.").

*27 For like reasons, the factual predicate for a punitive damages award-- that the defendant acted with "malice" or "reckless indifference," *see* 42 U.S.C. § 1981a(b)(1)--has a stigmatizing effect that deserves more evidentiary certainty than the preponderance standard provides. *See State Farm,* 123 S.Ct. at 1521 ("[P]unitive damages should only be awarded if the defendant's culpability is [ ] *reprehensible.*") (emphasis added); *Addington,* 441 U.S. at 424 ("One typical use of the [clear and convincing] standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant ... [to] reduce the risk to the defendant of having his reputation tarnished erroneously."); *see also Haslip,* 499 U.S. at 54 (O'Connor, J., dissenting) ("[P]unitive damages are quasi-criminal punishment. Unlike compensatory damages ... punitive damages are specifically designed to exact punishment in excess of actual harm to make clear that the defendant's misconduct was especially reprehensible. Hence, there is a stigma attached to an award of punitive damages that does not accompany a purely compensatory award.").

By 1991, the supreme courts or legislatures of 29 States had directly addressed the issue whether punitive damage claims required a heightened burden of proof. Of those States, 20 of them chose the clear and convincing standard for all punitive damages claims, one State (Colorado) applied the beyond a reasonable doubt standard to these claims and two States (Florida and Oklahoma) applied the clear and convincing standard when the punitive award was a specific multiple of the actual damages in the case. *See* App. A (identifying the burden of proof in each State with respect to punitive damages in 1991). *See also* Michael Rustad & Thomas Koenig, *The Historical Continuity of Punitive Damages Awards: Reforming the Tort Reformers,* 42 Am. U.L.Rev. 1269, 1278 n. 63 (1993) (identifying States with a clear and convincing standard in 1993).

When Congress addressed this issue in 1991, it also was doing so in the context of a modern trend in favor of the higher standard--a trend that was well underway before the 1991 amendments to Title VII. The American Bar Association recommended the higher standard in 1986. *See* Special Committee on Punitive Damages, *Punitive Damages: A Constructive Examination,* 1986 A.B.A. Sec. Litig. 33 ("Because one of the purposes of punitive damages is punishment ... [t]he committee concludes [ ] that the 'clear and convincing' burden of proof is appropriate for an award of punitive damages. This is the standard often used in fraud cases, to which there is some analogy."). The American Law Institute did the same in 1991. *See* 2 American Law Institute, *Reporters' Study: Enterprise Responsibility for Personal Injury* 264 (1991) ("An enterprise should be liable for punitive damages only when there is clear and convincing evidence of reckless disregard for the safety of others in the decisions made by management officials or other senior personnel."). As of today, the supreme courts or legislatures from 34 States have addressed the burden of proof issue, with 31 now requiring a heightened burden of proof. *See* App. B (identifying the burden of proof for punitive damages in each State as of 2004).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 25

**\*28** The States within the Sixth Circuit, moreover, are nearly uniform in applying a clear and convincing standard. By 1991, Ohio and Kentucky had established the standard by statute, and Tennessee did so by court decision in 1992. *See* App. A. Although the Michigan courts have not directly addressed the issue, at least one state appeals court has approved, without discussion, a jury instruction requiring proof by a preponderance of the evidence for an award of exemplary damages. *Green v. Evans,* 156 Mich.App. 145, 401 N.W.2d 250, 252 (Mich.Ct.App.1985). *But see Kewin v. Mass. Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 55 (Mich.1980) (noting that exemplary damages serve only to compensate plaintiffs for "humiliation, sense of outrage, and indignity"--and may not serve as punishment to the defendant).

While there may not be a Rosetta Stone to guide us here, Supreme Court precedents concerning punitive damages and comparable forms of relief, as well as relevant state-law practices, suggest that a clear and convincing standard of proof ought to govern these claims. A claim for punitive damages, in a nutshell, is more akin to claims concerning fraud, deportation and expatriation, oral contracts and illegitimacy than it is to more conventional civil claims. Accordingly, the heightened burden of proof associated with these claims and traditionally associated with punitive damages claims in general ought to apply.

The additional citations identified by the majority in support of the plaintiff's position do not alter this analysis. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), deals with whether actual malice is required to obtain punitive damages under § 1983, not with the preponderance/clear and convincing debate raised here. *Simpson v. Pittsburgh Corning Corp.,* 901 F.2d 277 (2d Cir.1990), involved a products liability claim under New York law, in which the defendant argued that the Due Process Clause of the United States Constitution *requires* a clear and convincing standard. In rejecting that argument, the court "acknowledg[ed] the force of the argument that since punitive damages are awarded primarily to punish a defendant for past conduct and to deter it and others from similar conduct in the future, a standard of proof appropriate for 'quasi-criminal wrongdoing' should be required." *Id.* at 282.

*In re Exxon Valdez,* 270 F.3d 1215 (9th Cir.2001), is an admiralty-law decision in which the Ninth Circuit concluded that the district court did not "abuse its discretion" in applying a preponderance standard to a punitive damages claim. *Id.* at 1232-33. Again, the primary debate in the case was whether the Due Process Clause required a higher standard. Moreover, if like the Ninth Circuit we applied an abuse of discretion to this issue (which we do not), it no doubt would be a very different question whether the district court in this case abused its discretion in imposing the higher standard of proof. The Fourth Circuit's decision in *Notter v. North Hand Protection,* No. 95- 1087, 1996 WL 342008 (4th Cir. June 21, 1996), besides being unpublished, rejects only one argument by the employer in that case--that the higher burden of proof for punitive damages claims *under state law* should control the Title VII inquiry. *Id.* at \*10. And the Harvard Law Review piece supports the employer's position in this case. In addition to approving "measures that guide and direct juries toward appropriate [ ] determinations," it notes that "the widespread acceptance of the clear and convincing evidence standard demonstrates [the] states' acknowledgment of the retributive function of punitive damages." *Jury Determination of Punitive Damages,* 110 Harv. L.Rev. 1513, 1532-33, 1536 (1997).

**\*29** Nor does the cap on punitive damages claims under Title VII advance plaintiff's argument. While a cap on punitive damages addresses one issue in this area (the outer limits of awards), it does not account for the other issues in this area--the appropriate quantum of proof required (1) before a jury may attach a "reprehensibility" label to another's conduct, *State Farm,* 123 S.Ct. at 1521, or (2) before a jury may award punitive damages that have a significant ratio to the underlying compensatory award. In ascertaining the constitutional limits of punitive damages, it is the ratio of the two awards, not the size of the punitive damages award, that the Supreme Court considers in measuring the award's compliance with Due Process--which is why awards under $300,000 may still violate the Constitution and why they still deserve the prevailing burden of proof for punitive damages claims in this country, namely clear and convincing evidence. *See id.* at 1524 (ratios involving "[s]ingle- digit multipliers are more likely to comport with due process, while still achieving

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726    Page 26
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1") (citation omitted); *see also Ross v. Kansas City Power & Light Co.,* 293 F.3d 1041, 1049 (8th Cir.2002) (reducing punitive damages award from $120,000 to $60,000 to correct constitutional deficiency); *Tyson Foods, Inc. v. Stevens,* 783 So.2d 804, 810 (Ala.2000) ("In this case, the punitive-damages award of $75,000 is 30 times the compensatory-damages award of $2,500. Considering the facts before us, we find the ratio of 30:1 to be unreasonable."); *Employees' Benefit Ass'n v. Grissett,* 732 So.2d 968, 979 (Ala.1998) ("The punitive award of $150,000 is 170 times the compensatory award of $880. That 170:1 ratio is unacceptable.").

But that is not the most significant problem with invoking the damages cap in this instance. All agree that Congress did not give the courts particularly helpful guidance here, requiring us to answer what the burden of proof for a federal punitive damages claim should be in the face of congressional silence. An answer that says punitive damages claims receive a preponderance standard when the award is under $300,000 but receive a clear and convincing standard when the award is some higher amount to be named later does not seem very helpful. Neither do I understand how the damages cap could make a difference in the outcome of this case. If, in this instance, the Court had concluded that a clear and convincing standard generally applies to punitive damages claims in the face of congressional silence, the existence of a cap of this sort by itself could not alter the presumption. If instead the Court had concluded that a preponderance standard generally applies in this setting, the existence of a damages cap would make no difference at all. Either way, in other words, the outcome would be unaffected by the existence of the cap.

*30 I have one other qualm with the majority's decision on this point-- which is reaching the burden of proof issue at all. I do not understand how White could prevail on remand in a punitive-damages-only trial, no matter what the burden of persuasion is. Because we required an en banc hearing to decide whether White suffered an adverse employment action and, notably, to determine whether this Circuit embraced the ultimate-employment-decision test, it would not seem possible for a jury to conclude that Burlington Northern acted with reckless disregard for White's federally-protected rights in imposing the suspension. *See* 42 U.S.C. § 1981a(b)(1) (requiring proof that the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual"); *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) ("The terms 'malice' or 'reckless indifference' pertain to the employer's *knowledge* that it may be acting in *violation of federal law,* not its awareness that it is engaging in discrimination.") (emphasis added); *id.* at 537 (recognizing that imposing punitive damages would be inappropriate when "[t]he underlying theory of discrimination [is] novel or otherwise poorly recognized").

A punitive damages claim with respect to the *transfer* count is even harder to imagine. Until now, no Sixth Circuit case (to my knowledge) has found a cognizable Title VII claim arising from a lateral transfer, let alone a transfer *within* an employee classification and without a loss in pay. *See Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir.1996) ( "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.") (citing *Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987)). While the opinion concludes that this transfer count is cognizable under Title VII, its reasons for doing so could not support a finding that Burlington Northern acted with "malice" or "reckless indifference" to White's rights.

For these reasons, I respectfully dissent from Parts IV and V of the Court's opinion.

APPENDIX A
State Burdens of Proof for Punitive Damages in 1991

By 1991, the supreme courts or legislatures of the following States had adopted a higher burden of proof for awarding punitive damages:

Alabama Ala.Code § 6-11-20(a) (1991) (clear and convincing evidence).

Alaska Alaska Stat. § 09.17.020 (1991) (clear and convincing evidence).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726        Page 27
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

Arizona *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675, 680-81 (Ariz.1986) ("[W]hile a plaintiff may collect compensatory damages upon proof by a preponderance of the evidence of his injuries due to the tort of another, we conclude that recovery of punitive damages should be awardable only upon clear and convincing evidence of the defendant's evil mind.").

California Cal. Civ.Code § 3294(a) (1991) (clear and convincing evidence).

**\*31** Colorado Colo.Rev.Stat. § 13-25-127(2) (1991) (beyond a reasonable doubt).

Florida Fla. Stat. Ann. § 768.73(1)(b) (1991) (punitive damages exceeding three times actual damages must be proved by clear and convincing evidence).

Georgia Ga.Code Ann. § 51-12-5.1(b) (1991) (clear and convincing evidence).

Hawaii *Masaki v. Gen. Motors Corp.,* 71 Haw. 1, 780 P.2d 566, 575 (Haw.1989) ("[F]or all punitive damage claims we adopt the clear and convincing standard of proof.").

Indiana Ind.Code § 34-4-34-2 (1991) (clear and convincing evidence).

Iowa Iowa Code § 668A.1(1)(a) (1991) (clear and convincing evidence).

Kansas Kan. Stat. Ann. § 60-3702(c) (1991) (clear and convincing evidence).

Kentucky Ky.Rev.Stat. Ann. § 411.184(2) (1991) (clear and convincing evidence).

Maine *Tuttle v. Raymond,* 494 A.2d 1353, 1363 (Me.1985) ("[W]e hold that a plaintiff may recover exemplary damages based upon tortious conduct only if he can prove by clear and convincing evidence that the defendant acted with malice.").

Minnesota Minn.Stat. § 549.20(1)(a) (1991) (clear and convincing evidence).

Montana Mont.Code Ann. § 27-1-221(5) (1991) (clear and convincing evidence).

Nevada Nev.Rev.Stat. 42.005(1) (1991) (clear and convincing evidence).

North Dakota N.D. Cent.Code § 32-03.2-11 (1991) (clear and convincing evidence).

Ohio Ohio Rev.Code Ann. § 2315.21(C)(3) (1991) (clear and convincing evidence).

Oklahoma Okla. Stat. tit. 23 § 9.1.A (1991) (punitive damages exceeding the amount of actual damages must be proved by clear and convincing evidence).

Oregon Or.Rev.Stat. § 41.315(1) (1991) (clear and convincing evidence).

South Carolina S.C.Code Ann. § 15-33-135 (1991) (clear and convincing evidence).

Utah Utah Code Ann. § 78-18-1(1)(a) (1991) (clear and convincing evidence).

Wisconsin *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437, 458 (Wis.1980) ("We hold that the [clear, satisfactory and convincing evidence] burden of proof shall apply to punitive damages claims hereafter.").

By 1991, the supreme courts or legislatures of the following States had rejected a higher burden of proof for awarding punitive damages:

Connecticut *Freeman v. Alamo Mgmt. Co.,* 221 Conn. 674, 607 A.2d 370, 375 (Conn.1992) ("We disagree ... with the ... conclusion ... that clear and convincing proof is an appropriate standard of proof whenever claims of tortious conduct [such as those involving punitive damages] have serious consequences or harsh or far-reaching effects on individuals or require the proof of willful, wrongful and unlawful acts.").

Idaho Idaho Code § 6-1604(1) (1991) (preponderance of the evidence).

Mississippi *Gaylord's of Meridian, Inc. v. Sicard,* 384 So.2d 1042, 1045 (Miss.1980) ("Although the damages are by way of penalizing the defendant against whom they are sought, the proof is by a preponderance of the evidence rather than beyond a reasonable doubt.") *overruled on other grounds by*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726  
--- F.3d ----, 2004 Fed.App. 0102P  
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 28

*C & C Trucking Co. v. Smith*, 612 So.2d 1092, 1105-06 (Miss.1992); *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1188 (Miss.1990) ("[T]he law requires a finding of 'bad faith-*plus*'--based upon a preponderance of the evidence--before punitive damages may be awarded.").

**\*32** Missouri *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo.1990) ("The defendant argues that punitive damage submissions should require 'clear and convincing' evidence. This requirement is contrary to our normal requirements in the submission of civil cases. We are not disposed so to hold, or to follow cases from other jurisdictions so holding.").

New Mexico *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P.2d 649, 654 (N.M.1985) ("It is the general rule ... that issues of fact in civil cases are to be determined according to the preponderance of the evidence.... We are not convinced that the degree of proof should be changed [to require clear and convincing evidence] in punitive damage areas.").

South Dakota *Flockhart v. Wyant*, 467 N.W.2d 473, 475 (S.D.1991) ("[S.D. Codified Laws § 21-1-4.1] does *not* establish a clear and convincing evidence standard but merely requires clear and convincing evidence to show a *reasonable* basis [to believe the defendants committed acts warranting punitive damages]. The clear and convincing language merely modifies the 'reasonable basis' language to make a prima facie showing that punitive damages *may* be in order.").

By 1991, the supreme courts and legislatures of the following States had yet to address the question whether claims for punitive damages require a heightened burden of proof, though (as noted below) some lower courts had addressed the issue and some supreme courts had mentioned, without discussing, jury instructions requiring a preponderance of the evidence:

Arkansas *Nat'l Bank of Commerce v. McNeill Trucking Co., Inc.*, 309 Ark. 80, 828 S.W.2d 584, 591 (Ark.1992) (Dudley, J., concurring) ("I would hope that the possible changes discussed in this opinion [*i.e.* the adoption of a clear and convincing standard for punitive damages] might be brought before this court in an adversarial manner.... It is a matter which we have never addressed.").

Delaware *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891-92 (Del.1983) ( "We now turn to Cloroben's contention that the jury improperly awarded punitive damages in that they were not supported by a preponderance of the evidence.... Our review of the record indicates that there is sufficient evidence to support a finding ... [and] we must reject the argument that there was insufficient evidence to support an award of punitive damages."); *Guthridge v. Pen-Mod, Inc.*, 239 A.2d 709, 715 (Del.Super.Ct.1967) (instructing the jury that "[p]unitive damages may be awarded only if the jury finds by a preponderance of the evidence that the defendants' actions were motivated by some form of malice.").

Illinois *Illinois Terminal R.R. Co. v. Thompson*, 210 Ill. 226, 71 N.E. 328, 333 (Ill.1904) (approving a jury instruction that "left it to the discretion of the jury to impose whatever damages they might choose, even to the extent of allowing punitive damages" by a preponderance of the evidence).

**\*33** Louisiana *Galjour v. Gen. Am. Tank Car Corp.*, 764 F.Supp. 1093, 1100-01 (E.D.La.1991) ("In fact, there are no Louisiana cases which specifically discuss the appropriate burden of proof for exemplary damages.... The defendants' argument that a heightened burden of proof should apply to exemplary damages is not without merit, as shown by recent legislative enactments in other jurisdictions, but it is not the law in Louisiana. Until the Louisiana legislature takes action to raise the burden, the law is that the burden of proof for exemplary damages is by a preponderance of the evidence.") (footnote omitted); *see also Int'l Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988) ("Under Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute.").

Maryland *Gorman v. Sabo*, 210 Md. 155, 122 A.2d 475, 479 (Md.1956) ("There is no doubt that punitive damages may be recovered in [this] case.... The applicable law was correctly put to the jury by the trial court in his charge. He told them the Sabos must prove their case 'by a fair preponderance of the evidence.' ") (citation omitted); *Thorne v. Contee*, 80 Md.App. 481, 565 A.2d 102, 108

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726            Page 29
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

(Md.Ct.Spec.App.1989) ("In order for the issue of punitive damages to go to the jury, Thorne must have produced sufficient evidence of Contee's wanton or reckless conduct to meet the preponderance of the evidence test."), *cert. denied*, 318 Md. 514, 569 A.2d 643 (Md.1990); 318 Md. 682, 569 A.2d 1242 (Md.1990).

Massachusetts *Santos v. Chrysler Corp.,* No. 921039, 1996 WL 1186818, at *3 (Mass.Super.Ct. Sept. 18, 1996) ("Chrysler contends that the court erred because it failed to instruct the jury that they must find by clear and convincing evidence that Chrysler was grossly negligent before they could award punitive damages. The contention is meritless. Under Massachusetts law the burden of proof in civil proceedings of this kind is satisfied 'by a fair preponderance of the evidence.' ") (citation omitted), *aff'd in part and remanded on other grounds,* 430 Mass. 198, 715 N.E.2d 47 (Mass.1999).

Michigan *Green v. Evans,* 156 Mich.App. 145, 401 N.W.2d 250, 252 (Mich.Ct.App.1985) (approving, without discussing the burden of proof, a jury instruction stating: "Such exemplary damages only are recoverable if the Plaintiff has proven by a preponderance of the evidence, malice, willful and wanton misconduct or negligence so great as to indicate reckless disregard of the rights of another."). *But see Kewin v. Mass. Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 55 (Mich.1980) (noting that exemplary damages only serve to compensate plaintiffs for "humiliation, sense of outrage, and indignity"--exemplary damages may not serve as punishment to the defendant).

Nebraska *Distinctive Printing & Packaging Co. v. Cox,* 232 Neb. 846, 443 N.W.2d 566, 574 (Neb.1989) ("[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.").

New Hampshire New Hampshire has not addressed the burden of proof for punitive damages. *See* N.H.Rev.Stat. Ann. § 507:16 (2004) ("No punitive damages shall be awarded in any action, unless otherwise provided by statute.").

*34 New Jersey *Fischer v. Johns-Manville Corp.,* 103 N.J. 643, 512 A.2d 466, 482 (N.J.1986) (refusing to address the burden of proof in punitive damages cases because "the parties have not briefed or argued the issue, nor have the courts below addressed it"); *see also Jackson v. Consol. Rail Corp.,* 223 N.J.Super. 467, 538 A.2d 1310, 1321 n. 5 (N.J.Super.Ct.App.Div.1988) ("Defendant also attacks the punitive damage verdict because the court in its charge did not place the burden on plaintiff to prove same by 'clear and convincing' evidence. However, that is not the present standard applicable in New Jersey.").

New York *Greenbaum v. Handelsbanken,* 979 F.Supp. 973, 982 (S.D.N.Y.1997) ( "[T]he Court determines that until ... higher authorities elect[ ] to address the question, the preponderance of the evidence standard should apply to punitive damages deliberations .").

North Carolina *Caudle v. Benbow,* 228 N.C. 282, 45 S.E.2d 361, 362 (N.C.1947) (approving, without discussing, a jury instruction requiring the jury to "first find by the preponderance of the evidence the presence of actual malice").

Pennsylvania *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1098 n. 14 (Pa.1985) (Hutchinson, J., delivering the judgment of the court and an opinion joined by only one of the five remaining justices) (recognizing that many jurisdictions have adopted a clear and convincing standard and concluding: "We believe the goal of limiting punitive damage awards in the context of products liability litigation is best served by focusing on the nature of the defendant's conduct instead of increasing the plaintiff's burden of persuasion."); *Rizzo v. Michener,* 401 Pa.Super. 47, 584 A.2d 973, 979 (Pa.Super.Ct.1990) ("The trial judge must determine in the first instance whether the plaintiff has presented sufficient evidence to support a punitive damage claim, which requires evidence on which the jury might reasonably conclude that outrageous conduct has been established by a preponderance of the evidence."), *appeal denied,* 528 Pa. 613, 596 A.2d 159 (Pa.1991).

Rhode Island Rhode Island has not addressed the burden of proof for recovering punitive damages.

Tennessee Tennessee first addressed the burden of proof for punitive damages in 1992 in *Hodges v.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 1:02-cv-00345-HJW    Document 42-3    Filed 05/05/2004    Page 14 of 20

Page 31 of 37

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 30

S.C. Toof & Co., 833 S.W.2d 896, 900-01 (Tenn.1992), and held that the clear and convincing standard applies to all claims for punitive damages.

Texas *Lawson-Avila Const., Inc. v. Stoutamire,* 791 S.W.2d 584, 594 (Tex.Ct.App.1990) ("We ... continue to follow the Texas precedent established by the Courts of this State and hold that the burden of proof in cases involving ... exemplary damages is by a preponderance of the evidence [and not clear and convincing evidence].") (internal quotations omitted), *writ of error denied* (Dec. 12, 1990).

Vermont Vermont has not addressed the burden of proof for recovering punitive damages.

Virginia *Peacock Buick, Inc. v. Durkin,* 221 Va. 1133, 277 S.E.2d 225, 227 n. 3 (Va.1981) (approving, without discussing the burden of proof, a jury instruction stating: "[I]f you believe from a preponderance of the evidence that the defendant acted wantonly, oppressively, or with such recklessness as evinced a conscious disregard of the rights of others, or with such malice as implied a spirit of mischief, or criminal indifference to civil obligations, you may award the plaintiff such additional sum as punitive damages.").

*35 Washington *Sintra, Inc. v. City of Seattle,* 131 Wash.2d 640, 935 P.2d 555, 566 (Wash.1997) (holding, without addressing the burden of proof, that the trial court properly instructed the jury that it could award punitive damages on the 42 U.S.C. § 1983 claim 'only if you find [by a preponderance of the evidence] that the conduct of an individual defendant was malicious or taken in reckless disregard of plaintiffs' rights' ") (alteration in original). *But see Dailey v. North Coast Life Ins. Co.,* 129 Wash.2d 572, 919 P.2d 589, 590 (Wash.1996) ("Since its earliest decisions, this court has consistently disapproved of punitive damages as contrary to public policy.").

West Virginia *Goodwin v. Thomas,* 184 W.Va. 611, 403 S.E.2d 13, 16 (W.Va.1991) (reinstating an award of punitive damages, without discussing the burden of proof, based on the following jury instruction: "[I]f you find from a preponderance of all the evidence in this case, that the actions of the Defendants in evicting the Plaintiff were in total disregard of the Plaintiff's rights as a lessee in the leased premises and that such actions were willful and wanton then you may award the Plaintiff punitive damages .").

Wyoming *Campen v. Stone,* 635 P.2d 1121, 1127 (Wyo.1981) (approving, without discussing the burden of proof, a jury instruction stating: "Punitive damages can properly be awarded ... only if, one of the following [acts] has been proven by a preponderance of the evidence.") (internal quotations omitted).

APPENDIX B
State Burdens of Proof for Punitive Damages in 2004

As of today, the supreme courts or legislatures from the following States have adopted the higher burden of proof for awarding punitive damages:

Alabama Ala.Code § 6-11-20(a) (2004) (clear and convincing evidence).

Alaska Alaska Stat. § 09.17.020(b) (2004) (clear and convincing evidence).

Arizona *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 723 P.2d 675, 680-82 (Ariz.1986) ("[W]hile a plaintiff may collect compensatory damages upon proof by a preponderance of the evidence of his injuries due to the tort of another, we conclude that recovery of punitive damages should be awardable only upon clear and convincing evidence of the defendant's evil mind."); *Saucedo ex rel. Sinaloa v. Salvation Army,* 200 Ariz. 179, 24 P.3d 1274, 1277 (Ariz.Ct.App.2001) ("In Arizona, to recover punitive damages, a plaintiff must prove by clear and convincing evidence that a 'defendant's wrongful conduct was guided by evil motives or wilful or wanton disregard of the interests of others.' ") (citation omitted), *review denied* (Oct. 3, 2001).

CaliforniaAEl. Civ.Code § 3294(a) (2004) (clear and convincing evidence).

Colorado Colo.Rev.Stat. § 13-25-127(2) (2004) (beyond a reasonable doubt).

Florida Fla. Stat. Ann. § 768.725 (2004) (clear and convincing evidence).

Georgia Ga.Code Ann. § 51-12-5.1(b) (2004)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726    Page 31
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

(clear and convincing evidence).

Hawaii *Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 32 P.3d 52, 71 (Haw.2001) ("Clear and convincing evidence of 'some wilful misconduct or ... entire want of care which would raise presumption of a conscious indifference to consequences' supports an award of punitive damages.") (internal quotations omitted).

*36 Idaho Idaho Code § 6-1604(1) (2004) (clear and convincing evidence).

Indiana Ind.Code § 34-51-3-2 (2004) (clear and convincing evidence).

Iowa Iowa Code § 668A.1(1)-(2) (2004) (clear and convincing evidence).

Kansas Kan. Stat. Ann. § 60-3702(c) (2004) (clear and convincing evidence).

Kentucky Ky.Rev.Stat. Ann. § 411.184(2) (2004) (clear and convincing evidence).

Maine *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 818 A.2d 995, 1001 (Me.2002) (" '[I]n order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted with malice.' ") (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1354 (Me.1985)).

Maryland *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633, 657 (Md.1992) ("[I]n *any* tort case a plaintiff must establish by clear and convincing evidence the basis for an award of punitive damages."); *Carter v. Aramark Sports and Entm't Servs., Inc.*, 153 Md.App. 210, 835 A.2d 262, 287 (Md.Ct.Spec.App.2003) ("The 'clear and convincing' standard of proof applies to make out a claim for punitive damages.").

Minnesota Minn.Stat. § 549.20(1)(a) (2004) (clear and convincing evidence).

Mississippi Miss.Code Ann. § 11-1-65(1)(a) (2004) (clear and convincing evidence).

Missouri *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 111 (Mo.1996) ( "For common law punitive damage claims, the evidence must meet the clear and convincing standard of proof."); *Hoskins v. Bus. Men's Assurance*, 116 S.W.3d 557, 564 (Mo.Ct.App.2003) ("Punitive damages are properly submitted in a negligence [or strict liability] case only if there is clear and convincing evidence that 'at the time of the negligent act, the defendant[s] knew or had reason to know that there was a high degree of probability that the action would result in injury.' ") (citation omitted).

Montana Mont.Code Ann. § 27-1-221(5) (2004) (clear and convincing evidence).

Nevada Nev.Rev.Stat. 42.005(1) (2004) (clear and convincing evidence).

New Jersey N.J. Stat. Ann. § 2A:15-5.12(a) (2004) (clear and convincing evidence).

North Carolina N.C. Gen.Stat. § 1D-15(b) (2004) (clear and convincing evidence).

North Dakota N.D. Cent.Code § 32-03.2-11(1) (2004) (clear and convincing evidence).

Ohio Ohio Rev.Code Ann. § 2315.21(C)(2) (2004) (clear and convincing evidence).

Oklahoma Okla. Stat. tit. 23, § 9.1.B-.D (2004) (clear and convincing evidence).

Oregon Or.Rev.Stat. § 18.537(1) (2004) (clear and convincing evidence).

South Carolina S.C.Code Ann. § 15-33-135 (2004) (clear and convincing evidence).

Tennessee *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992) ("[A] plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence."); *Barnett v. Lane*, 44 S.W.3d 924, 928 (Tenn.Ct.App.2000) ("[A]n award [of punitive damages] is only appropriate when the necessary conduct has been shown 'by clear and convincing evidence.' ").

*37 Texas Tex. Civ. Prac. & Rem.Code Ann. § 41.003(b) (2004) (clear and convincing evidence).

Utah Utah Code Ann. § 78-18-1(1)(a) (2004) (clear and convincing evidence).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Wisconsin *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 294 N.W.2d 437, 458 (Wis.1980) ("We hold that the [clear, satisfactory and convincing evidence] burden of proof shall apply to punitive damages claims hereafter."); *City of West Allis v. Wis. Elec. Power Co.,* 248 Wis.2d 10, 635 N.W.2d 873, 881 (Wis.Ct.App.2001) ("The evidence [supporting a punitive damages award] must also be 'clear and convincing.' "), *pet. for review denied,* 643 N.W.2d 93 (Wis.2002).

As of today, the supreme courts or legislatures from the following States have rejected a higher burden of proof for awarding punitive damages:

Connecticut *Freeman v. Alamo Mgmt. Co.,* 221 Conn. 674, 607 A.2d 370, 375 (Conn.1992) ("We disagree ... with the ... conclusion ... that clear and convincing proof is an appropriate standard of proof whenever claims of tortious conduct [such as those involving punitive damages] have serious consequences or harsh or far-reaching effects on individuals or require the proof of willful, wrongful and unlawful acts.").

New Mexico *United Nuclear Corp. v. Allendale Mut. Ins.,* 103 N.M. 480, 709 P.2d 649, 654 (N.M.1985) ("It is the general rule ... that issues of fact in civil cases are to be determined according to the preponderance of the evidence.... We are not convinced that the degree of proof should be changed [to require clear and convincing evidence] in punitive damages areas.").

South Dakota *Flockhart v. Wyant,* 467 N.W.2d 473, 475 (S.D.1991) ("[S.D. Codified Laws § 21-1-4.1] does *not* establish a clear and convincing evidence standard but merely requires clear and convincing evidence to show a *reasonable* basis [to believe the defendants committed acts warranting punitive damages]. The clear and convincing language merely modifies the 'reasonable basis' language to make a prima facie showing that punitive damages *may* be in order.").

As of today, the supreme courts and legislatures from the following States have yet to address the question whether claims for punitive damages require a heightened burden of proof, though (as noted below) some lower courts have addressed the issue and some supreme courts had mentioned, without discussing, jury instructions requiring a preponderance of the evidence:

Arkansas *Nat'l Bank of Commerce v. McNeill Trucking Co., Inc.,* 309 Ark. 80, 828 S.W.2d 584, 590 (Ark.1992) (Dudley, J., concurring) ("I would hope that the possible changes discussed in this opinion [*i.e.* the adoption of a clear and convincing standard for punitive damages] might be brought before this court in an adversarial manner.... It is a matter which we have never addressed.").

Delaware *Cloroben Chem. Corp. v. Comegys,* 464 A.2d 887, 891-92 (Del.1983) ( "We now turn to Cloroben's contention that the jury improperly awarded punitive damages in that they were not supported by a preponderance of the evidence.... Our review of the record indicates that there is sufficient evidence to support a finding ... [and] we must reject the argument that there was insufficient evidence to support an award of punitive damages."); *Guthridge v. Pen-Mod, Inc.,* 239 A.2d 709, 715 (Del.Super.Ct.1967) (instructing the jury that "[p]unitive damages may be awarded only if the jury finds by a preponderance of the evidence that the defendants' actions were motivated by some form of malice.").

*38 Illinois *Illinois Terminal R.R. Co. v. Thompson,* 210 Ill. 226, 71 N.E. 328, 333 (Ill.1904) (approving a jury instruction that "left it to the discretion of the jury to impose whatever damages they might choose, even to the extent of allowing punitive damages" by a preponderance of the evidence).

Louisiana *Hill v. Sampson,* 628 So.2d 81, 84 (La.Ct.App.1993) ("While this argument has theoretical appeal, we are not inclined by these judicial means to establish 'clear and convincing evidence' as the standard of proof for exemplary damages under [Louisiana's DUI law]. In our view, had the legislature intended a higher standard of proof than that of a preponderance of the evidence, it would have clearly so indicated."); *Rivera v. United Gas Pipeline Co.,* 697 So.2d 327, 335 (La.Ct.App.1997) (holding that earlier interpretation of Louisiana's hazardous substance handling statute "says nothing of creating a 'clear and convincing' burden of proof, and this Court is not prepared to create one.... Ergo, until the Louisiana legislature takes direct action, the burden of proof for exemplary damages is by a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 1:02-cv-00345-HJW    Document 42-3    Filed 05/05/2004    Page 17 of 20

Page 34 of 37

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 33

preponderance of the evidence."), *cert. denied,* 704 So.2d 1196, 1197 (La.1997).

Massachusetts *Santos v. Chrysler Corp.,* No. 921039, 1996 WL 1186818, at *3 (Mass.Super.Ct. Sept. 18, 1996) ("Chrysler contends that the court erred because it failed to instruct the jury that they must find by clear and convincing evidence that Chrysler was grossly negligent before they could award punitive damages. The contention is meritless. Under Massachusetts law the burden of proof in civil proceedings of this kind is satisfied 'by a fair preponderance of the evidence.' "), *affirmed in part and remanded on other grounds,* 430 Mass. 198, 715 N.E.2d 47 (Mass.1999).

Michigan *Green v. Evans,* 156 Mich.App. 145, 401 N.W.2d 250, 252 (Mich.Ct.App.1985) (approving, without discussing the burden of proof, a jury instruction stating: "Such exemplary damages only are recoverable if the Plaintiff has proven by a preponderance of the evidence, malice, willful and wanton misconduct or negligence so great as to indicate reckless disregard of the rights of another"). *But see Kewin v. Mass. Mut. Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50, 55 (Mich.1980) (noting that exemplary damages only serve to compensate plaintiffs for "humiliation, sense of outrage, and indignity"--exemplary damages may not serve as punishment to the defendant).

Nebraska *Distinctive Printing & Packaging Co. v. Cox,* 232 Neb. 846, 443 N.W.2d 566, 574 (Neb.1989) ("[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.").

New Hampshire New Hampshire has not addressed the burden of proof for punitive damages. *See* N.H.Rev.Stat. Ann. § 507:16 (2004) ("No punitive damages shall be awarded in any action, unless otherwise provided by statute.").

New York *Greenbaum v. Svenska Handelsbanken,* 979 F.Supp. 973, 978-82 (S.D.N.Y.1997) ("[T]he Court determines that until ... higher authorities elect [ ] to address the question, the preponderance of the evidence standard should apply to punitive damages deliberations."). *Compare Munoz v. Puretz,* 301 A.D.2d 382, 753 N.Y.S.2d 463, 466 (N.Y.App.Div.2003) ("In order to recover punitive damages, a plaintiff must show [certain conduct] by 'clear, unequivocal and convincing evidence.' ") (citation omitted), *with In re Seventh Judicial Dist. Asbestos Litig.,* 190 A.D.2d 1068, 593 N.Y.S.2d 685, 686- 87 (N.Y.App.Div.1993) ("The trial court properly instructed the jury that the evidentiary standard for proving entitlement to punitive damages is preponderance of the evidence, not clear and convincing evidence.").

*39 Pennsylvania *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 494 A.2d 1088, 1098 n. 14 (Pa.1985) (Hutchinson, J. delivering the judgment of the court and an opinion joined by only one of the five remaining justices) (recognizing that many jurisdictions have adopted a clear and convincing standard and concluding: "We believe the goal of limiting punitive damage awards in the context of products liability litigation is best served by focusing on the nature of the defendant's conduct instead of increasing the plaintiff's burden of persuasion."); *Rizzo v. Michener,* 401 Pa.Super. 47, 584 A.2d 973, 979 (Pa.Super.Ct.1990) ("The trial judge must determine in the first instance whether the plaintiff has presented sufficient evidence to support a punitive damage claim, which requires evidence on which the jury might reasonably conclude that outrageous conduct has been established by a preponderance of the evidence."), *appeal denied,* 528 Pa. 613, 596 A.2d 159 (Pa.1991).

Rhode Island Rhode Island has not addressed the burden of proof for recovering punitive damages.

Vermont Vermont has not addressed the burden of proof for recovering punitive damages.

Virginia *Peacock Buick, Inc. v. Durkin,* 221 Va. 1133, 277 S.E.2d 225, 227 n. 3 (Va.1981) (approving, without discussing the burden of proof, a jury instruction stating: "[I]f you believe from a preponderance of the evidence that the defendant acted wantonly, oppressively, or with such recklessness as evinced a conscious disregard of the rights of others, or with such malice as implied a spirit of mischief, or criminal indifference to civil obligations, you may award the plaintiff such additional sum as punitive damages."); *RF & P Corp. v. Little,* 40 S.E.2d 908, 914 (Va.1994) (holding that a preponderance of the evidence standard applies to a knowing and willful violation of a statute resulting in a civil fine, and the clear

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 1:02-cv-00345-HJW    Document 42-3    Filed 05/05/2004    Page 18 of 20

Page 35 of 37

2004 WL 789726
Page 34
--- F.3d ----, 2004 Fed.App. 0102P
**(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))**

and convincing evidence standard applies only "to certain cases that are equitable in nature, such as suits involving fraud and misrepresentation, undue influence, [or] estoppel.").

Washington *Sintra, Inc. v. City of Seattle,* 131 Wash.2d 640, 935 P.2d 555, 566 (Wash.1997) (stating, without addressing the burden of proof, that the trial court properly instructed the jury that it could award punitive damages on a 42 U.S.C. § 1983 claim "only if you find [by a preponderance of the evidence] that the conduct of an individual defendant was malicious or taken in reckless disregard of plaintiffs' rights.") (quotation omitted and alteration in original). But see *Dailey v. North Coast Life Ins. Co.,* 129 Wash.2d 572, 919 P.2d 589, 590 (Wash.1996) ("Since its earliest decisions, this court has consistently disapproved of punitive damages as contrary to public policy.").

West Virginia *Goodwin v. Thomas,* 184 W.Va. 611, 403 S.E.2d 13, 16 (W.Va.1991) (finding sufficient evidence to support an award of punitive damages, without discussing the burden of proof, based on the following jury instruction: "[I]f you find from a preponderance of all the evidence in this case, that the actions of the Defendants in evicting the Plaintiff were in total disregard of the Plaintiff's rights as a lessee in the leased premises and that such actions were willful and wanton.").

**\*40** Wyoming *Campen v. Stone,* 635 P.2d 1121, 1127 (Wyo.1981) (approving, without discussing the burden of proof, a proposed jury instruction stating: "Punitive damages can properly be awarded ... only if, one of the following [acts] has been proven by a preponderance of the evidence.").

FN1. Although this court and most other courts use the term "adverse employment action," some courts, including the Supreme Court, use the term "tangible employment action" or some other variation for the same concept. See, e.g., *Burlington Indus.,* 524 U.S. at 761 ("tangible employment action"); *Bowman,* 220 F.3d at 461 n. 5 ("Courts use the terms 'tangible employment detriment' and 'materially adverse employment action' interchangeably.").
As the one alternative to showing the existence of an adverse employment action, a plaintiff may support a Title VII claim by showing that "plaintiff was subjected to severe or pervasive retaliatory [or other discrimination based] harassment by a supervisor." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000). What constitutes severe or pervasive harassment is not at issue in this appeal.

FN2. The decisions cited by *Jackson* from the Tenth and Eleventh Circuits, *Burrus* and *Jones,* both cite *Smalley v. City of Eatonville,* 640 F.2d 765, 769 (5th Cir.1981), which in turn cites *Whatley* as the basis for including "adverse employment action" among the elements of a Title VII claim. *Whatley* cites a treatise published in 1976. 632 F.2d at 1328 (citing B. Schlei & P. Grossman, Employment Discrimination Law, Ch. 15 (1976)). It appears that the inclusion of "adverse employment action" as an element of a Title VII claim originated with the treatise cited by *Whatley.* See *Williams v. Boorstin,* 663 F.2d 109, 120 (D.C.Cir.1980) (J. Bazelon, concurring) (stating that "adverse employment action" is among the elements of a Title VII retaliation claim under "the standard found in B. Schlei & P. Grossman, Employment Discrimination Law 436 (1976)"). The first reported case in the nation to include "adverse employment action" as an element of a Title VII claim was decided the year after publication of the treatise. *EEOC v. Locals 14 and 15 Int'l Union of Operating Eng'rs,* 438 F.Supp. 876, 881 (S.D.N.Y.1977).

FN3. For instance, in *Hollins v. Atlantic Co.,* this court relied upon *Kocsis* to decide that an employee had not suffered an adverse employment action when she received lower ratings in a performance evaluation. 188 F.3d 652, 662 (6th Cir.1999). The *Hollins* court held that lower ratings were not enough in the absence of "evidence to show that the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 35

lowered performance ratings actually had an effect on her wages such that a court may conclude that there was a materially adverse employment action." Id. In Bowman v. Shawnee State University, this court relied upon Kocsis and Hollins to hold that the temporary removal of a university instructor from his position as the Coordinator of Sports Studies did not rise to the level of an adverse employment action. 220 F.3d 456, 461-62 (6th Cir.2000). The Bowman court focused on the facts that the removal was for only ten days, the employee maintained his position as a full-time university instructor, and he never lost any income. Id.

FN4. We have recognized that the dictionary definition of "discriminate" is "to distinguish; to make distinctions in treatment; show partiality or prejudice." Mattei v. Mattei, 126 F.3d 794, 804 (6th Cir.1997) (quoting Webster's New World Dictionary); see also Oxford English Dictionary (2d ed.1989) ("to discriminate against: to make an adverse distinction with regard to; to distinguish unfavorably from others").

FN5. Although both § 2000e-2(a)(1) and § 2000e-3(a) use the phrase "discriminate against," the former specifies that the prohibited discrimination must be "with respect to his compensation, terms, conditions, or privileges of employment," while the anti-retaliation provision contains no such language. The parties dispute whether this additional language is a limitation or an expansion of the conduct prohibited. We have never before distinguished between the types of conduct prohibited in the different provisions, and we do not do so here. We find it untenable to interpret the additional language as an expansion of prohibited conduct because "with respect to" is a phrase commonly used to limit. But cf. Mattern v. Eastman Kodak Co., 104 F.3d 702, 709 (5th Cir.1997) ("The anti-retaliation provision speaks only of 'discrimination'; there is no mention of the vague harms contemplated in § 2000e-2(a)(2). Therefore, this provision can only be read to exclude such vague harms, and to include only ultimate employment decisions."). The D.C. Circuit and the United States District Court for the Northern District of Ohio have written well-reasoned opinions that conclude that the absence of the additional language from the anti-retaliation provision means that an employer is prohibited from retaliating in materially adverse ways, regardless of whether the retaliatory acts affect employment. Passer v. American Chem. Soc., 935 F.2d 322, 330-31 (D.C.Cir.1991) (holding that an employer's cancellation of a major public symposium in former employee's honor could be an act of retaliation under a statute that parallels Title VII's anti-retaliation provision); EEOC v. Outback Steakhouse of Florida, Inc., 75 F.Supp.2d 756, 758-60 (N.D.Ohio 1999) (holding that Title VII's anti-retaliation provision is not limited to discrimination affecting employment). It is unnecessary for us to resolve the question addressed in Passer and Outback Steakhouse because the actions at issue in the present case (job transfer and suspension) clearly affect employment.

FN6. In fact, as will be mentioned again below, the Supreme Court has pointed out to this court before that internal grievance procedures and an action under Title VII are "legally independent" such that the statute of limitations on a Title VII claim is not tolled during the pendency of an internal grievance process. Int'l Union of Elec. Workers v. Robbins & Myers, Inc., 429 U.S. 229, 236, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (reversing a Sixth Circuit decision).

FN7. We recognize that our decision in Dobbs Weinstein was based in part upon the unique nature of "tenure decisions in an academic setting." 185 F.3d at 545. Other circuits also have acknowledged the unique nature of tenure decisions. See

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Case 1:02-cv-00345-HJW   Document 42-3   Filed 05/05/2004   Page 20 of 20

Page 37 of 37

2004 WL 789726
--- F.3d ----, 2004 Fed.App. 0102P
(Cite as: 2004 WL 789726 (6th Cir.(Tenn.)))

Page 36

*Tanik v. S. Methodist Univ.*, 116 F.3d 775, 776 (5th Cir.1997); *Brousard-Norcross v. Augustana Coll. Ass'n*, 935 F.2d 974, 976 (8th Cir.1991); *Kumar v. Bd. of Trs., Univ. of Mass.*, 774 F.2d 1, 11 (1st Cir.1985); *Zahorik*, 729 F.2d at 92-93 (2d Cir.1984). Because we are not presented here with a denial of tenure, we do not decide to what extent our holding in *Dobbs-Weinstein* survives our decision in this case.

FN8. The National Employment Lawyers Association in its *amicus curiae* brief on behalf of White concedes that a suspension with pay pending a timely, good-faith investigation does not constitute an adverse employment action and recommends this course to employers concerned about possible misconduct.

FN9. The limits are lower for smaller employers, with the lowest limit being $50,000 for employers with 15-100 employees. 42 U.S.C. § 1981a(b)(3)(A)-(D).

FN1. *See Hashimoto v. Dalton*, 118 F.3d 671 (9th Cir.1997) (holding that negative job references are actionable under § 704(a)); *Ray*, 217 F.3d at 1243; *Jeffries v. Kansas*, 147 F.3d 1220, 1231-32 (10th Cir.1998) (holding that, "[i]n recognition of the remedial nature of Title VII, the law in this circuit liberally defines adverse employment action" and "takes a case-by-case approach to determining whether a given employment action is 'adverse' "); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984-86 (10th Cir.1996) (construing Title VII's anti-retaliation provision to protect an employee from a malicious prosecution action brought by a former employer); *Wideman v. Wal Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998) (holding that negative job evaluations, demotions, suspensions, disadvantageous transfer and toleration of harassment may be actionable as a retaliation claim).

FN2. *Cf. Morris v. Wal-mart Stores, Inc.*, 330 F.3d 854 (6th Cir.2003) (holding, under Tennessee law, that the reasonable person standard is utilized to determine whether or not sufficient evidence exists when contemplating a directed verdict motion in a res ipsa loquitur negligence case); *U.S. v. Jones*, 335 F.3d 527 (6th Cir.2003) (employing a reasonable person standard when adjudicating the presence of apparent authority to determine whether entry was consensual in a Fourth Amendment context); *Five Cap, Inc., v. National Labor Relations Board*, 294 F.3d 768, 786 (6th Cir.2002) (employing the objective "reasonable person" standard when determining whether or not work conditions are so "unbearable" as to violate § 8(a)(3) of the National Labor Relations Act).

FN3. The Ninth Circuit in *Ray v. Henderson* found defendant's reliance on *Burlington* similarly misplaced when advocating that Title VII qualifies the type of employment actions that would constitute an "adverse" action. 217 F.3d at 1242, n. 5. The Court stated that *Burlington* did not set forth a standard for adverse employment actions in the anti-retaliation context. *Id.*

--- F.3d ----, 2004 WL 789726 (6th Cir.(Tenn.)), 2004 Fed.App. 0102P

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works